GOODIN, MACBRIDE,
SQUERI & DAY, LLP
Robert A. Goodin, Bar No. 061302
rgoodin@goodinmacbride.com
Francine T. Radford, Bar No. 168269
fradford@goodinmacbride.com
505 Sansome Street, Suite 900
San Francisco, California  94111
Telephone:     (415) 392-7900
Facsimile:      (415) 398-4321


MCGUINN, HILLSMAN & PALEFSKY
Cliff Palefsky, Bar No. 77683
cp@mhpsf.com
Matt Koski, Bar No. 262803
mkoski@mhpsf.com
535 Pacific Avenue
San Francisco, California 94133
Telephone:  (415) 421-9292
Facsimile:   (415) 403-0202

Attorneys for Plaintiff
JOEL RAY JACOBS

## UNITED STATES DISTRICT COURT

## IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL RAY JACOBS, | Case No.: |
| Plaintiff, | Judge: |
| vs. | Magistrate Judge: |
| SUSTAINABILITY PARTNERS LLC, a Delaware limited liability company; THOMAS E. CAIN, an individual, and DOES 1 - 10, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendant(s). | |

*Goodin, MacBride, Squeri & Day, LLP*
*Attorneys At Law*
*San Francisco*

1

COMPLAINT

**COMPLAINT**

Plaintiff Joel Ray Jacobs ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Thomas E. Cain ("Defendant Cain") and Sustainability Partners LLC ("Defendant SP" or "Company") (collectively "Defendants"), states as follows:

**NATURE OF THE ACTION**

1.     This is a federal diversity action involving statutory and common law claims arising under California law.  Plaintiff asserts claims against Defendant for breach of contract, false promise/fraud/intentional misrepresentation, wrongful termination in violation of California public policy, and violations of the California Labor Code.

2.     As part of his employment compensation, Defendant Cain represented that Plaintiff would be granted a 15% ownership stake in Defendant SP.  In reliance on this representation, and repeated affirmations of it, Plaintiff expended considerable effort and his personal financial resources in furthering Defendant SP's business enterprise.  Despite Plaintiff's actions in reliance, Defendants failed to effectuate the transfer of the promised 15% of SP equity to Plaintiff.  Defendants also willfully misclassified Plaintiff as an independent contractor, expressly for the purpose of avoiding paying payroll taxes and other employment-related expenses, and have failed to reimburse him for business expenses he incurred in fulfilling his responsibilities on behalf of Defendant SP.  After terminating Plaintiff's employment on April 16, 2019, Defendants willfully failed to pay Plaintiff final wages he was owed in the time prescribed by law.

**PARTIES**

3.     Plaintiff is an individual residing in Geyserville, California.

4.     Defendant SP is a Delaware limited liability company with its principal place of business in Chandler, Arizona.

5.     Defendant Cain is a founder of SP and has served as SP's Chief Executive Officer ("CEO") since its inception.  Defendant Cain is a resident of the state of Arizona.

6.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 - 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff

will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is legally liable to Plaintiff as hereinafter alleged, and that Plaintiff's rights against fictitiously named defendants arise from such liability.

7.    Plaintiff is informed and believes and based thereon allege that at all material times, SP, Defendant Cain, and Does 1-10, and each of them, were the agents, co-conspirators, employees, officers, principals, or representatives of each of the other defendants; that in doing the things hereinafter set forth, defendants were acting within the course and scope of such relationship; and that Plaintiff's losses as alleged herein were proximately caused by the conduct of all defendants. SP, Defendant Cain, and Does 1-10 are sometimes referred to collectively herein as "Defendants."

## JURISDICTION AND VENUE

8.    The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendants are citizens of different states and more than $75,000 is in controversy. The combined value of Plaintiff's damages caused by Defendants' unlawful conduct exceeds $75,000.

9.    The Court has specific personal jurisdiction over Defendants because they have sufficient contacts with the state of California. Plaintiff performed a substantial portion of his duties on Defendants' behalf in California, and the damages to Plaintiff caused by Defendants' unlawful conduct has been and will be felt predominantly or entirely in California.

10.    Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS

11.    Plaintiff is a highly-accomplished executive, with over 30 years of expertise ranging from Wall Street to Silicon Valley. He has been a founding partner, head of sales, and management committee member to multiple investment banks. In addition, he has helped identify, launch, grow, and manage alternative investment strategies as a chief executive officer, managing partner, chief investment officer, and founding partner, working with institutional

investors and high net worth individuals.

12.     Plaintiff was first introduced to SP and Defendant Cain when SP was a portfolio company of the investment firm at which Plaintiff was employed at the time.

13.     At that time, SP was underperforming its growth expectations and was even considering shutting down the business. Plaintiff began discussions with Defendant Cain about ways to alter SP's business strategy to attract the types of investors SP would need to grow.

14.     Defendant Cain agreed to Plaintiff's suggested improvements to SP's business strategy, and Plaintiff agreed to work with Defendant Cain to lead the implementation the new strategy.  In doing so, Plaintiff drew upon his extensive professional network to introduce SP and Defendant Cain to numerous institutional investors.

15.     Before beginning work exclusively for SP in April 2016, Plaintiff sought assurances from Defendant Cain regarding Plaintiff's compensation: i) that he would be paid a substantial annual salary; and ii) that he would receive as much equity ownership in SP as possible, with the ability to increase his ownership stake over time.  Defendant Cain agreed verbally to Plaintiff's requests.

16.     Plaintiff subsequently entered into a written employment agreement with SP in or around August of 2016.  Plaintiff was initially hired as the Company's Managing Director, with a base salary of $300,000 per year, plus other payments and bonuses, as well as equity in the Company, to vest over a period of four years, all as reflected in a written employment agreement and an equity grant agreement both dated as of August 22, 2016.

17.     Plaintiff's duties and responsibilities included *inter alia* identifying and soliciting potential customers for SP's services, as well as potential investors in SP's business enterprise, and in addition managing SP's sales force from August 2016 - June 2017.  In addition Plaintiff in July 2017 persuaded Defendant Cain to convert the business from a "shared services" business model to an "infrastructure services model" which conversion enabled SP to survive and over time achieve great success.

18.     Plaintiff's investor and client development efforts for SP were integral not only to its potential financial growth and success, but at key points also were vital to ensuring SP's

COMPLAINT

continued survival. Essentially, it was Plaintiff's relationships with and reputation among the investor community that allowed SP to access the investments it needed to stay afloat.

19.     In every meeting with clients and/or investors Plaintiff attended with Defendant Cain during the course of his employment, Defendant Cain always referred to Plaintiff as the "number two professional" at SP, thereby underlining Plaintiff's importance to the Company.

20.     In documents describing SP's business model that were approved by Defendant Cain for disclosure to potential lenders and investors, Plaintiff was the second individual included on a list of SP's "Full Time Employees," just below Defendant Cain.

21.     In or around April 2017, in connection with a change in the Company's ownership, Plaintiff's employment agreement was amended twice. Among other things, Plaintiff released his claims to equity ownership in the Company arising from the Employment Agreement in exchange for a payment of $50,000.

22.     Several months later, in or about July 2017, SP purported to terminate Plaintiff's employment, and in place of his employment agreements, treat him as an independent contractor. Plaintiff would provide the same services as he had provided as an employee, but would not be classified as an employee. Defendants represented that the change would be temporary and was needed in order to better position the Company for obtaining new financing. Defendant Cain also told Plaintiff that the change was intended to allow Defendants to avoid paying payroll taxes and other expenses on behalf of its employees. Plaintiff did not agree to the proposed reclassification. Plaintiff further informed Defendant Cain that two very significant potential investors, who were critical to the SP's survival would not invest unless Plaintiff was 100% committed to SP. Plaintiff made clear to Defendant Cain that his commitment to staying with SP would not be forthcoming if he were not granted a significant equity ownership in SP. Defendants subsequently, in early July 2017,offered Plaintiff a 15% equity position in SP, in consideration for the performance of Plaintiff's past services to SP and his promise to provide services in the future, which latter offer Plaintiff accepted.

23.     Plaintiff's equity ownership in SP was reflected in capitalization tables approved by Defendant Cain and shared with potential investors on numerous occasions after July 2017.

COMPLAINT

24.     Written SP business models approved by Defendant Cain which identified Plaintiff as owning 15% of the Company also were shared with dozens of potential investors on multiple occasions after July 2017.

25.     Additionally, in meetings with over 30 investment groups, Defendant Cain represented that he and Plaintiff combined owned nearly 100% of the Company.

26.     Between July 2017 and Plaintiff's termination Plaintiff repeatedly asked Defendant Cain to provide a written contract affirming Plaintiff's ownership of 15% of the Company.

27.     Defendant Cain responded to each of Plaintiff's requests that a written contract affirming their verbal agreement was forthcoming.

28.     In reliance on Defendant Cain's assurances regarding Plaintiff's ownership stake in the Company, Plaintiff expended substantial personal resources in furtherance of his efforts to attract potential investors and clients for SP's business enterprise.

29.     Defendant Cain knew of the extensive efforts and expenses Plaintiff was undertaking on the Company's behalf.

30.     Absent Defendant Cain's promises to him regarding his ownership stake in the Company, Plaintiff would not have continued working for the Company, and therefore would not have undertaken substantial expenses in furtherance of his efforts on the Company's behalf.

31.     Plaintiff's efforts in reforming SP's investment strategy and helping lead its implementation led to substantial growth in SP's work backlog in just over 2 years.

32.     Thereafter, notwithstanding Plaintiff's objections, SP purported to classify Plaintiff as an independent contractor.  Defendants knowingly and willfully sought to misclassify Plaintiff as an independent contractor for the specific purpose of avoiding SP's responsibilities regarding the payment of payroll taxes and other operating costs, including reimbursing Plaintiff for the business expenses he incurred while carrying out his assigned duties on Defendants' behalf.  Notwithstanding SP purported classification of Plaintiff as an independent contractor, Plaintiff was, as detailed below, an employee of SP.

33.     On or around April 16, 2019, Defendant Thomas Cain and SP's Chief

COMPLAINT

Administrative Officer Adam Cain presented Plaintiff with what was titled an "Authorized Development Partner Agreement." This proposed agreement would have altered Plaintiff's status from an employee to an independent contractor.

34.    In presenting this new "agreement," Adam Cain told Plaintiff that SP was terminating his existing agreement. Plaintiff responded by telling him that for the entire period Plaintiff worked for SP, he was repeatedly assured, both verbally and in writing, that he would be a full-time employee and senior executive of SP.

35.    Plaintiff also expressed his belief that he was an employee and that it was improper to misclassify him as an independent contractor. He therefore refused to sign the agreement and was terminated.

36.    After terminating Plaintiff, Defendants willfully refused to pay Plaintiff for his owed wages for more than 30 days.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Against All Defendants)**

37.    Plaintiff incorporates the allegations of ¶¶ 1 through 36 above as if set forth in full herein.

38.    In or about July 2017, Defendants offered Plaintiff a 15% equity position in SP, in consideration for the performance of Plaintiff's services to SP to date, and his promise to provide services to SP in the future, which offer Plaintiff accepted.   Plaintiff has fully performed under this contract except as prevented or excused by Defendants' conduct.

39.    In or about April 2019, Defendants breached the contract by failing and refusing to effectuate the transfer of the agreed 15% of SP equity to Plaintiff, and by firing Plaintiff from SP, preventing further performance of Defendants' agreement.

40.    Plaintiff has suffered damage proximately caused by Defendants' breach in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Wrongful Termination in Violation of California Public Policy**
**(Against SP Only)**

41.    Plaintiff hereby incorporates by reference the allegations set forth in ¶¶ 1 through

GOODIN, MACBRIDE, SQUERI & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

40 as if fully set forth herein.

42.     It is the public policy of the State of California to ensure that employers do not willfully misclassify employees as independent contractors, embodied *inter alia* in Labor Code § 226.8.  Misclassification deprives employees of important benefits to which they otherwise would be entitled and allows employers to avoid their responsibilities regarding *inter alia* payroll taxes, workers compensation, and unemployment insurance.  The policy in question therefore involves a matter that affects society at large rather than a purely personal or proprietary interest of the Plaintiff.

43.     Further, it is the public policy of the State of California to prohibit employers from discharging employees for engaging in protected activity *(e.g.,* refusing to acquiesce in their employer's scheme to willfully misclassify them as an independent contractors), as embodied in Labor Code §§ 98.6 and 226.8.

44.     Under the terms of Plaintiff's original employment agreement with SP, Plaintiff was a Managing Director of SP, and was "subject to . . . the policies, standards and procedures generally applicable to senior management employees." Plaintiff's status as an employee was re-affirmed expressly in written amendments to his original employment agreement executed by him and SP in April 2017.

45.     Notwithstanding SP purported re-classification of Plaintiff as an "independent contractor" starting in July 2017, Plaintiff, at all times until Plaintiff's termination, was an employee of SP, as evidenced by the following:

        a.     During the course of Plaintiff's employment, SP retained the right to control the manner and means of Plaintiff's work;

        b.     Plaintiff's employment agreement with SP specified that his employment was "at-will" and "may be terminated at any time with or without cause or notice;"

        c.     At all times from the beginning of his employment with SP until his termination, Plaintiff earned an annual salary, which was paid in regular monthly or bi-monthly installments;

        d.     At no point during his employment was Plaintiff paid on an hourly, per-

COMPLAINT

project, and/or other piece-rate basis, and at no point before the final month of Plaintiff's employment was he asked to submit an invoice before being paid his regular salary;

e.      Plaintiff was not engaged in an occupation or business distinct from SP's, and at no time while he was employed by Defendant did he hold himself out to the Company's potential or existing clients, customers, and/or investors as having a separate occupation or business;

f.      In fact, in carrying out his duties on SP's behalf, Plaintiff was asked by potential investors, strategic partners, advisors, employees and independent contractors for SP's enterprise to confirm that he was "absolutely committed" to SP;

g.      Plaintiff worked exclusively for SP for the entirety of his employment, and regularly spent over 225 hours per month completing his duties on the Company's behalf.  While he was employed by the SP, Plaintiff was dependent on the Company for the entirety of his livelihood;

h.      The duties performed by the Plaintiff were part of the regular business of SP and were integral to its business enterprise;

i.      Plaintiff remained in constant communication with Defendant Cain regarding the methods that Plaintiff would deploy to complete his assigned duties;

j.      This included attending weekly telephone meetings led by Defendant Cain, during which Plaintiff would report on his activities and accomplishments from the previous week, the roster of prospective and committed investors, and share his planned activities for the upcoming week.

k.      SP issued Plaintiff business cards, which included SP's name, logo, and website address, as well as the company email address issued to Plaintiff by the Company, and identified Plaintiff as SP's Chief Investment Officer ("CIO");

l.      At all times during his employment by SP, Plaintiff communicated on the Company's behalf through Defendant's email system, using an email address issued to him by SP;

m.      At Defendants' direction, Plaintiff maintained records regarding existing

9

COMPLAINT

or potential customers and/or investors, as well as SP's project pipeline, using SP's customer relationship management system;

n.    Cain affirmed Plaintiff's employment status in writing to a creditor of Plaintiff's;

o.    In documents describing SP's business model that were approved by Cain for disclosure to potential lenders and investors, Plaintiff was included on a list of SP's "Full Time Employees." Cain disclosed these documents to potential lenders and investors on multiple occasions after July 2017;

p.    Any terms in the alleged independent contractor agreement notwithstanding, Plaintiff's duties and responsibilities, and Defendants' control over the manner and means of his work, remained unchanged between July 2017 and his termination.

46.    On or around April 16, 2019, Defendant Thomas Cain and SP's Chief Administrative Officer Adam Cain presented Plaintiff with what was titled an "Authorized Development Partner Agreement." This proposed agreement would have altered Plaintiff's status from an employee to an independent contractor.

47.    In presenting this new "agreement," Adam Cain told Plaintiff that SP was terminating his existing agreement. Plaintiff responded by telling him that for the entire period Plaintiff worked for SP, he was repeatedly told, both verbally and in writing, that he would be a full-time employee and senior executive of SP.

48.    Plaintiff also expressed his belief that he was an employee and that it was improper to misclassify him as an independent contractor. He therefore refused to sign the agreement and was terminated.

49.    Because the Plaintiff refused to consent to Defendants' further attempt to willfully misclassify him, Defendants terminated the Plaintiff.

50.    As alleged herein, Plaintiff was terminated in retaliation for engaging in protected activity, i.e., his refusal to allow Defendant to willfully misclassify him as an independent contractor. His termination was therefore in violation of public policy.

10

COMPLAINT

51.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages including, but not limited to, a loss of income and other benefits from Defendants.  Further, Plaintiff has suffered emotional distress and other general damages.

52.     In doing the things alleged herein, Defendant's conduct was despicable, and Defendants acted toward Plaintiff with malice, oppression, fraud, and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
**Waiting Time Penalties**
**(Violation of California Labor Code §§ 201, 203)**
**(Against All Defendants)**

53.     Plaintiff hereby incorporates by reference the allegations set forth in ¶¶ 1 through 52 as if fully set forth herein.

54.     Labor Code § 201 requires Defendants to pay Plaintiff all wages due within the time specified by law.  Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days of wages.

55.     Upon termination, Plaintiff was entitled to unpaid compensation in the form of unpaid wages.  However, Defendants willfully refused to pay Plaintiff for his owed wages for more than 30 days.

56.     Labor Code § 558.1 provides that "any person acting on behalf of an employer, who violates, or causes to be violated . . . [Labor Code] Section[] 203 . . . may be held liable as the employer for such violation." Cain is individually liable for the violations of law described herein, in that he decided, planned, and caused the unlawful acts alleged herein on behalf of SP, and exercised plenary authority and control over the SP employees who refused to pay the wages owed to the Plaintiff.  Cain further knew that Plaintiff was owed unpaid wages upon his termination and willfully refused to pay them for over thirty days.

57.     As a consequence of Defendants' willful conduct in not timely paying compensation due, Plaintiff is entitled to waiting time penalties under Labor Code § 203 and

interest thereon, plus reasonable attorneys' fees and costs, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### Failure to Reimburse Business Expenses
### (Violation of California Labor Code § 2802)
### (Against All Defendants)

58.     Plaintiff incorporates by reference the allegations set forth in ¶¶ 1 through 57 as if fully set forth herein.

59.     Pursuant to Labor Code § 2802, Defendants are required to indemnify Plaintiff for the expenses and losses incurred during the performance of his job duties.

60.     As part of his duties as SP's CIO, Plaintiff regularly was required to travel to meet with: (i) Cain and other company executives; (ii) existing or potential clients and/or customers for SP's products and services; and (iii) existing or potential investors in SP's business enterprise.

61.     The travel required as a condition of his employment resulted in Plaintiff incurring substantial expenses, including *inter alia* (i) mileage traveled by Plaintiff in his vehicle; (ii) applicable tolls and parking fees; (iii) airfare to and from meetings with Cain and other SP Executives and employees, existing or potential clients and/or customers, and/or existing or potential investors; (iv) car rental costs and/or fees for ridesharing services; (v) hotel accommodations and related lodging expenses; (vi) meals and other expenses related to entertaining clients, customers, and/or investors; (vii) cellular telephone expenses.

62.     At all times relevant to Plaintiff's claims, Cain knew or should have known Plaintiff was incurring the expenses in question.

63.     At no point during Plaintiff's employment was he required to obtain advance authorization from Cain or any other SP Executive and/or employee before incurring any specific reasonable and necessary expenses in the course of completing his required duties on SP's behalf, as a condition of having those expenses reimbursed in full.

64.     In violation of Labor Code § 2802, the Defendants failed to reimburse the Plaintiff for *inter alia* the above-described reasonable costs undertaken by Plaintiff either at

Defendant's request, or with its knowledge and/or approval.

65.     Labor Code § 558.1 provides that "any person acting on behalf of an employer, who violates, or causes to be violated . . . [Labor Code] Section[] 2802 . . . may be held liable as the employer for such violation."  Defendant Cain therefore is liable individually for the violations of law described herein, in that he decided, planned, and caused the unlawful acts alleged herein on behalf of SP, and exercised plenary authority and control over the SP employees who implemented the unlawful directive to deprive Plaintiff of reimbursement for his reasonable and necessary expenses.  Further, Defendant Cain knew or should have known that Plaintiff was incurring the expenses described herein, but failed to reimburse Plaintiff for them.

66.     Plaintiff seeks to recover the full amount of these expenses and interest thereon, accruing from the date Plaintiff incurred the expenses, plus reasonable attorneys' fees and costs, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION
### Fraud/False Promise/Intentional Misrepresentation
### (Against All Defendants)

67.     Plaintiff hereby incorporates by reference the allegations set forth in ¶¶ 1 through 66 as if fully set forth herein.

68.     Defendant Cain, in oral conversations with Plaintiff in early July 2017, represented to Plaintiff that he would grant Plaintiff a 15% ownership interest in Defendant SP, and affirmed this promise on multiple occasions thereafter.

69.     Plaintiff is informed and believes and based thereon alleges that at the time he made this representation and when he subsequently re-affirmed it to Plaintiff on multiple occasions, Defendant Cain knew it to be false and did not intend to fulfill it.

70.     Defendant Cain intended that Plaintiff would rely on his representations.  Plaintiff relied on Defendant Cain's representations in continuing to work for Defendant SP, and in doing so expended substantial personal resources in undertaking extensive activities in furtherance of SP's business enterprise.  Plaintiff also relied on Defendant's representations to assure potential investors that he was committed to staying with the company, which commitment depended on

Defendant Cain's promise of a 15% equity ownership for Plaintiff in Defendant SP.

71.     By failing and refusing to effectuate the transfer of the agreed 15% of SP ownership to Plaintiff and firing Plaintiff from SP, Plaintiff was harmed, and Plaintiff's reliance on Defendant Cain's unfulfilled promises was a substantial factor in causing that harm.

72.     In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiff with malice, oppression, fraud, and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION
### *Quantum Meruit*
### (Against All Defendants)

73.     Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1 through 72 as though fully set forth herein.

74.     Over the course of his employment, Plaintiff performed services for Defendants as described in the preceding paragraphs, and those services were performed at Defendants' request and direction.

75.     At no time was it contemplated by the parties that Plaintiff's base salary would constitute his full compensation for the services he performed for Defendants.  In addition, Plaintiff was promised a 15% equity position in the Company.

76.     The precise fair and reasonable value of Plaintiff's services will be proven at trial, but in light of Plaintiff's singular contributions to securing the investments necessary to allowing the Company to survive and grow, Plaintiff is entitled to the reasonable value of those services.

77.     After terminating Plaintiff's employment, Defendants refused to effectuate the transfer of the promised 15% of SP equity to Plaintiff, and asserted that there was no agreement to do so.

78.     Defendants subsequently have refused, and continue to refuse, to compensate the Plaintiff for the reasonable value of his services as required by law. *Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794 ("To recover on a claim for the reasonable value of services under a *quantum meruit* theory, a plaintiff must establish both that he or she was acting

GOODIN, MACBRIDE, SQUERI & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant.")

79. In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiff with malice, oppression, fraud, and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION
**Recovery of Civil Penalties Under the California Labor Code Private Attorney General Act ("PAGA")**
**(Violation of California Labor Code § 2698 *et seq.*)**
**(Against All Defendants)**

80. Plaintiff incorporates by reference the allegations set forth in ¶¶ 1 through 79 as if fully set forth herein.

81. As a result of the acts alleged herein, Plaintiff, as an aggrieved employee within the meaning of Labor Code § 2699(c), seeks the recovery of civil penalties against the Defendants pursuant to Labor Code § 2698 *et seq.,* for the following knowing and intentional violations of the Labor Code.

    a. For willfully failing to promptly pay wages following termination of Plaintiffs employment, or when due and payable, in violation of Labor Code §§ 201 and 203; and

    b. For willfully misclassifying Plaintiff as an independent contractor in violation of Labor Code § 226.8.

82. The above-referenced civil penalties shall include the recovery of amounts specified in the applicable sections of the Labor Code, and shall include those amounts sufficient to recover all expenditures or losses incurred by Plaintiff, pursuant to Labor Code §§ 203 and 226.8.

83. Defendant Cain, acting for himself and on behalf of SP, is individually liable for the violations of law described herein, in that he decided, planned, and caused the unlawful acts alleged herein. As CEO of SP and its highest ranking officer, Cain exercised plenary authority

GOODIN, MACBRIDE, SQUERI & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and control over the employees who implemented the unlawful employment practices against the Plaintiff.  Cain knew that Plaintiff was properly regarded as an employee, but chose to willfully misclassify the Plaintiff as an independent contractor, in order to avoid SP's financial and other responsibilities as an employer under applicable law.

84.     Defendant Cain consequently is liable individually, pursuant to PAGA, for civil penalties arising under Labor Code § 226.8, which makes it unlawful for "any person or employer to engage "in willful misclassification of an individual as an independent contractor"; and under Labor Code § 558.1, which holds liable any "person acting on behalf of an employer who violates, or causes to be violated," *inter alia,* Labor Code § 203.

85.     On or about <u>March 20, 2020,</u> Plaintiff sent a letter by certified mail to Defendants giving notice of Defendants' Labor Code violations as alleged herein (the "PAGA letter").  A copy of the PAGA letter was also submitted on that same date to the California Labor and Workplace Development Agency ("LWDA"), via its online filing system, as required by the PAGA statute.

86.     The PAGA letter gave notice to Defendants of Plaintiff's intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA in the event the LWDA, following its review, declines to investigate the asserted violations of the Labor Code.

87.     Plaintiff will file an amended complaint after the LWDA has been afforded the opportunity to consider the Plaintiff's notice of Defendants' Labor Code violations, and of Plaintiff's intent to prosecute a private enforcement action for civil penalties under PAGA.  If the LWDA declines to investigate, Plaintiff will prosecute his PAGA cause of action against Defendants, pursuant to Labor Code § 2699.3(a)(2)(A).

88.     Plaintiff was compelled to retain the services of counsel to file this court action to protect his interests, and to assess and collect the civil penalties owed by Defendants.  Plaintiff has thereby incurred attorneys' fees and costs, which he is entitled to recover under Labor Code § 2699.

///

///

COMPLAINT

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief, as follows:

A.      For judgment in favor of Plaintiff and against Defendants;

B.      For damages in an amount to be proven at trial;

C.      For costs of suit and attorney fees to the extent allowed by law;

D.      For prejudgment interest to the extent allowed by law; and

E.      For such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff JOEL RAY JACOBS hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: March 20, 2020

GOODIN, MACBRIDE,
SQUERI & DAY, LLP
Robert A. Goodin
Francine T. Radford


By: _/s/ Robert A. Goodin_
Robert A. Goodin
Attorneys for Plaintiff
Joel Ray Jacobs

3789/001/X215483.v1

COMPLAINT