UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL RAY JACOBS,<br><br>             Plaintiff,<br><br>    v.<br><br>SUSTAINABILITY PARTNERS LLC, et al.,<br><br>             Defendants. | Case No.  20-cv-01981-PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 24 |

Before the court is defendants Sustainability Partners LLC ("SP") and Thomas Cain's ("Cain" and together with SP, "defendants") motion to dismiss and motion to transfer venue.  The matter is fully briefed and suitable for decision without oral argument.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

**BACKGROUND**

On March 20, 2020, Plaintiff Joel Ray Jacobs ("plaintiff") filed his complaint ("Compl.") against defendants asserting seven claims: (1) breach of contract; (2) wrongful termination in violation of public policy; (3) violation of California Labor Code §§ 201, 203; (4) violation of California Labor Code § 2802; (5) fraud/false promise/intentional misrepresentation; (6) quantum meruit; and (7) violation of the Private Attorney General Act ("PAGA"), Cal. Labor Code § 2698 et seq.  Dkt. 1.

Plaintiff is an individual residing in Geyserville, California, (id. ¶ 3), defendant SP is a Delaware limited liability company that is headquartered in Chandler, Arizona, (id. ¶ 4), and defendant Cain is SP's founder and Chief Executive Officer, residing in Arizona, (id.

¶ 5).  Plaintiff alleges he began working for defendants in April 2016 for the purpose of improving SP's business strategy.  Id. ¶¶ 13, 15.  Prior to undertaking this work, plaintiff sought assurances from defendant Cain that he would receive both an annual salary and equity ownership in SP and in August 2016, plaintiff entered into a written employment agreement with SP.  Id. ¶¶ 15–16.  Plaintiff was hired as SP's managing director with a base salary of $300,000 annually, plus other payments and bonuses and equity in the company.  Id. ¶ 16.  Plaintiff alleges that his relationships and reputation in the investor community allowed SP to access the investments it needed to stay afloat.  Id. ¶ 18.

In or around April 2017, in connection with a change in the company's ownership, plaintiff's employment agreement was amended twice and, as part of the amendment, plaintiff released his claims to equity ownership in return for $50,000.  Id. ¶ 21.  In or about July 2017, SP purported to terminate plaintiff's employment and treated him as an independent contractor providing the same services as when plaintiff was employed by SP.  Id. ¶ 22.  Defendants represented that the change would be temporary, and plaintiff alleges he did not agree to the reclassification.  Id.  In early July 2017, defendant Cain verbally offered plaintiff a 15% equity position in SP in consideration for his performance of past services and promise to provide future services, which plaintiff accepted.  Id.

Between July 2017 and his termination, plaintiff repeatedly asked Cain to provide to provide a written agreement affirming plaintiff's ownership of 15% of the company and Cain responded that a written contract was forthcoming.  Id. ¶¶ 26–27.  On or around April 16, 2019, defendant Cain and SP's Chief Administrative Officer Adam Cain presented plaintiff with a proposed agreement that would have altered plaintiff's status from employee to independent contractor.  Id. ¶ 33.  Plaintiff was told that SP was terminating his existing agreement.  Id. ¶ 34.  Plaintiff expressed his belief that he was an employee and that it was improper to misclassify him as an independent contractor; he refused to sign the agreement and was terminated.  Id. ¶ 35.

Defendants now move to dismiss for improper venue or, in the alternative to transfer for convenience pursuant to 28 U.S.C. § 1404(a).  Defendants also move in the

1   alternative to dismiss all of plaintiff's claims for failure to state a claim under Federal Rule

2   of Civil Procedure 12(b)(6).

3   **DISCUSSION**

4   **A.    Legal Standard**

5       **1.    Rule 12(b)(3)**

6       "The district court of a district in which is filed a case laying venue in the wrong

7   division or district shall dismiss, or if it be in the interest of justice, transfer such case to

8   any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  If a

9   defendant files a motion pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss

10   for improper venue, it is the plaintiff's burden to establish that venue is properly in the

11   district where the suit was filed.  Piedmont Label Co. v. Sun Garden Packing Co., 598

12   F.2d 491, 496 (9th Cir. 1979).  In considering a motion to dismiss under Rule 12(b)(3), a

13   court need not accept the pleadings as true and may consider facts outside the

14   pleadings.  See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).

15       Where venue is improper, a court has discretion to dismiss the case pursuant to

16   Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction

17   under 28 U.S.C. § 1406(a).  See King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992)

18   (per curiam).

19       **2.    28 U.S.C. § 1404**

20       In addition, "[f]or the convenience of parties and witnesses, in the interest of

21   justice, a district court may transfer any civil action to any other district or division where it

22   might have been brought . . . ."  28 U.S.C. § 1404(a).  The party moving for transfer for

23   the convenience of parties and witnesses the burden of demonstrating transfer is

24   appropriate.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.

25   1979).  In considering a § 1404(a) motion to transfer, the court must look at each of the

26   enumerated factors—whether the action could have been brought in the proposed

27   transferee district, the convenience of the parties, the convenience of the witnesses, and

28   the interests of justice.  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

United States District Court<br>Northern District of California

3

If the action could have been brought in the transferee venue, the court then must determine if the defendant has made a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum" by considering private factors relating to "the convenience of the parties and witnesses" and public factors relating to "the interest of justice," including "the administrative difficulties flowing from court congestion and [the] local interest in having localized controversies decided at home." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (internal quotation marks omitted).

Courts in this district commonly examine the following factors to determine convenience and fairness under § 1404(a): (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the ease of access to the evidence, (5) the familiarity of each forum with the applicable law, (6) the feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citation omitted); see Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000). Courts may examine all these factors, but "[n]o single factor is dispositive." Ctr. for Biological Diversity v. Kempthorne, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). The weighing of the factors for and against transfer is within a trial court's discretion. Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th Cir. 2007) (citation omitted).

### 3.     Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient

facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  Id. at 679.  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Because one of plaintiff's claims sound in fraud, the complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393

F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims.  See No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

**B.    Analysis**

Defendants advance two venue-related arguments.  First, they contend that venue is not proper in the Northern District of California under 28 U.S.C. § 1391(b) and, therefore, the court should dismiss the complaint or, in the alternative, transfer the case to the district court for the District of Arizona.  Mtn. at 3–6.  Second, defendants argue that even if venue is proper in this district, the court should transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404(a).  Id. at 6.

**1.    Whether Venue is Proper in the Northern District of California**

Venue in a civil action is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated: or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Defendants first argue that both SP and Cain reside in Arizona and, therefore, venue in the Northern District of California cannot be supported by § 1391(b)(1).  Mtn. at 4.  Next, defendants contend that a substantial part of the events or omissions giving rise to the claim did not occur in the Northern District of California.  Id.  For example, plaintiff alleges that he was wrongfully terminated for refusing to sign an authorized development agreement and defendants contend that the meeting concerning plaintiff's termination and that agreement occurred in Tempe, Arizona.  Id.  Additionally, the independent

6

United States District Court
Northern District of California

1  contractor agreement that SP provided to plaintiff in July 2017 had a venue provision that

2  all disputes would be resolved in Maricopa County, Arizona and defendants further

3  contend that agreement was the operative agreement between the parties.  Id. at 5.

4  According to defendants, SP never had a customer in the Northern District of California

5  and plaintiff's position required him to travel all over the country to meet potential

6  customers.  Id.

7      Plaintiff argues that his employment agreement contained a forum-selection

8  clause designating the Northern District of California as the venue to resolve any

9  disputes.  Opp. at 9.  He also argues that his contacts with California are substantial such

10  that venue is proper under § 1391(b)(2).  For example, plaintiff declares that he

11  essentially ran a satellite office for SP in California and he identified customers for SP in

12  California.  Id. at 11; Declaration of Joel Ray Jacobs ("Jacobs Decl."), Dkt. 29-1, ¶¶ 8, 12.

13  Also, Jacobs states that at all times during his employment with SP he worked from his

14  home in Sonoma County, California.  Jacobs Decl. ¶ 9.

15      The court begins with a few observations.  First, because neither SP nor Cain are

16  residents in this district, venue does not lie under the residential venue provision, 28

17  U.S.C. § 1391(b)(1).  Second, both defendants are residents of Arizona and venue would

18  lie in the district court for the District of Arizona; therefore, venue pursuant to § 1391(b)(3)

19  is not available to plaintiff.  Third, plaintiff's argument that the court should enforce the

20  forum-selection clause in his employment agreement has no bearing on whether venue is

21  proper pursuant to § 1391(b); rather, it may provide a reason to transfer venue under title

22  28 U.S.C. § 1404(a).  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571

23  U.S. 49, 59 (2013) ("Although a forum-selection clause does not render venue in a court

24  'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be

25  enforced through a motion to transfer under § 1404(a).").

26      The only basis for venue in this district is whether a substantial part of the events

27  giving rise to plaintiff's claims occurred in the Northern District of California.  See

28  § 1391(b)(2).  Plaintiff's first cause of action for breach of contract is based on an oral

7

United States District Court
Northern District of California

agreement[1] that the parties purportedly entered into in or about July 2017 and

defendants breached in April 2019.  Compl. ¶¶ 38–39.  To determine venue in cases

involving contract disputes, "courts have 'looked to such factors as where the contract

was negotiated or executed, where it was to be performed, and where the alleged breach

occurred.'"  Richmond Techs., Inc. v. Aumtech Bus. Solutions, 2011 WL 2607158, at *10

(N.D. Cal., July 1, 2011) (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir.

2005)).

In Decker Coal, 805 F.3d at 842, the Ninth Circuit concluded that venue was not

proper in the place where a contract was repudiated, but was proper in the place of

intended performance.  The court reasoned that "the place of performance is determinate

at the inception of the contract and therefore the parties can anticipate where they may

be sued."  Id.  Other courts have arrived at similar conclusions.  In Richmond

Technologies, Inc. v. Aumtech Business Solutions, 2011 WL 2607158, at *10, the court

determined that venue was proper in the Northern District of California where the

plaintiffs entered into and performed their contracts in this district, even though the

defendants "may have executed and performed their contracts in other locations."  See

also Shropshire v. Fred Rappoport Co., 294 F. Supp. 2d 1085, 1094 (N.D. Cal. 2003)

(finding venue proper where "some of the negotiations on the Agreement were conducted

in Northern California, [plaintiff] signed the Agreement in Northern California, and a

substantial portion of the performance under the Agreement occurred in this district").

Here, it is not clear where the contract was negotiated or executed.  Yet, it is

reasonably clear that the intended place of performance of plaintiff's duties and

responsibilities for SP was his home in the Northern District of California.  Plaintiff states

that at all times during his employment with SP, his "base of operations" was his home in

Sonoma County.  Jacobs Decl. ¶ 9.  Plaintiff solicited customers from his home in

---

[1] The parties dispute whether they entered into an oral agreement.  Reply at 7.  While the
court need not accept the pleadings as true and may consider facts outside the
pleadings, Argueta, 87 F.3d at 324, at this stage, defendants have not refuted plaintiff's
allegations of an oral agreement between the parties.

California, including customers themselves located in California.  Id. ¶¶ 7–8.  Plaintiff avers that he and defendant Cain held in-person meetings with potential SP customers in California in August 2017 and attended a conference in California in January 2018.  Jacobs Decl. ¶ 13.  Defendants dispute whether Cain actually traveled to California and contend that Jacobs did not secure any customer in California.  Declaration of Adam Cain ("Cain Decl."), Dkt. 24-1, ¶¶ 6–8.  They do not dispute, however, that plaintiff worked for SP from his home.[2]  For example, defendant SP's communications to plaintiff were addressed to his Geyserville, California address.  Id., Exs. B, C.

This case is similar to the facts of Vuori v. Grasshopper Capital LLC, 2018 WL 1014633 (N.D. Cal. Feb. 22, 2018).  In that case, the California-based plaintiff was a "successful entrepreneur and investor" with contacts in Silicon Valley and out-of-state defendants sought out plaintiff for his advice in establishing a cryptocurrency fund.  Id. at *1.  The parties agreed that plaintiff would advise defendants in return for a percentage of the fund's earnings and defendants would advertise the plaintiff's association with the fund.  Id.  The parties did not reduce their oral agreement to writing despite requests from the plaintiff to do so, until the relationship soured, and defendants repudiated the terms of the oral agreement.  Id. at *2–3.  In considering a Rule 12(b)(3) challenge by the defendants, the court noted that the plaintiff "engaged in negotiations and performed the bulk of his duties as an advisor in California".  Id. at *19.  Even though the defendants argued the contemplated place of performance was in New York, the court reasoned that the plaintiff was a California resident and the parties' agreement anticipated that plaintiff would provide his services remotely, presumably from his residence in California.  Id.  Thus, the court determined venue was proper in the Northern District of California.  Id.

The reasoning of Decker Coal and Richmond Technologies is persuasive and applies here.  Also significant, the facts parallel those in Vouri, where, as here, a

_____

[2] In their reply, defendants take issue with plaintiff labeling his home as SP's "satellite office."  Reply at 2.  The court agrees with defendants to the extent that plaintiff's home is not a formal office.  This conclusion in no way detracts from the observation that the parties intended for plaintiff to work remotely at his home in this District.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  California resident agreed to provide remote services to out-of-of state defendants.  The

2  evidence shows that the parties here were sophisticated business entities and individuals

3  and they contemplated an arrangement where defendants would perform their duties

4  from Arizona and plaintiff would perform his duties in California.  As Decker Coal, 805

5  F.2d at 842, reasoned, it is appropriate to find venue where the parties contemplated

6  performance so they could anticipate where they may be sued.

7       The cases cited by defendants are not the contrary.  In Labrie v. Cobain, 2013 WL

8  12131720, at *2 (C.D. Cal. Mar. 15, 2013), the district court determined that a substantial

9  part of the event giving rise to the plaintiff's claim did not occur in the Central District of

10  California where the plaintiff traveled to Los Angeles for approximately sixteen days out

11  of a total 379 days that she worked for the defendant.  Further, there was no evidence

12  that negotiations or breach of the contract occurred in that district.  See id.  Unlike Labrie,

13  plaintiff resided in the Northern District of California while he performed under his contract

14  for which he now brings a breach of contract claim.  Defendants also cite Kelly v. Echols,

15  2005 WL 2105309, at *12 (E.D. Cal. Aug. 30, 2005), for the proposition that courts

16  generally focus on the activities of the defendant, not the plaintiff.  Kelly cites several out

17  of circuit cases for this proposition, e.g., Jenkins Brick Co. v. Bremer, 321 F.3d 1366,

18  1372 (11th Cir. 2003), and those cases do not control over the more specific holding in

19  Decker Coal and the persuasive reasoning of Richmond Technologies and Vouri that

20  considered the place of negotiation, place of performance, and place of breach of a

21  contract.  See also Lerman v. My Pillow, Inc., 2012 WL 12953662, at *7 (C.D. Cal. Oct. 1,

22  2012) (finding venue proper where California-based merchandise consultant's

23  "performance of the contract involved him working on [an] infomercial project in . . . cities

24  within the Central District of California" even where execution of contract, production and

25  shooting of informercial and alleged failure to pay took place in Minnesota).

26       To summarize, venue may be proper in multiple districts if a "substantial part" of

27  the underlying events took place in each of those districts.  Tech. Credit Corp. v. N.J.

28  Christian Acad., Inc., 307 F. Supp. 3d 993, 1002 (N.D. Cal. 2018) (citation omitted).  It is

1    clear that plaintiff could have brought suit in the District of Arizona and it is likely that a

2    substantial part of the underlying events took place in Arizona.  However, based on the

3    place of performance of the contract, venue properly lies in this district pursuant to

4    § 1391(b)(2).

5          Finally, the court also must have venue over plaintiff's other claims.  "Once a court

6    has determined that venue is proper as to one claim," however, "it may exercise pendent

7    venue to adjudicate closely related claims."  United Tactical Sys. LLC v. Real Action

8    Paintball, Inc., 108 F. Supp. 3d 733, 753 (N.D. Cal. 2015); see also Flamingo Indus.

9    (USA) Ltd. v. U.S. Postal Serv., 302 F.3d 985, 997–98 (9th Cir. 2002), rev'd on other

10   grounds, 540 U.S. 736 (2004).  In this case, plaintiff's remaining claims are closely

11   related to the breach of contract claim as all claims relate to plaintiff's employment

12   arrangement with SP.

13         For the foregoing reasons, defendants' motion to dismiss pursuant to Rule

14   12(b)(3) is DENIED.

15         **2.      Whether the Court Should Transfer Venue**

16         In the alternative, defendants contend that the court should transfer this case to

17   the District of Arizona for the convenience of the parties and witnesses pursuant to 28

18   U.S.C. § 1404(a).  Mtn. at 7.

19               **a.      Whether Any Forum-Selection Clause Controls**

20         As discussed, plaintiff contends that the forum-selection clause in his employment

21   agreement provided for venue in this district.  Opp. at 9.  "Because forum selection

22   clauses are presumptively valid, they should be honored 'absent some compelling and

23   countervailing reason.'"  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir.

24   2004) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)).  Defendants

25   respond that SP terminated the employment agreement, effective June 30, 2017, and the

26   agreement does not control.  Reply at 5.  They also contend that plaintiff agreed to an

27   independent contractor agreement provided to plaintiff in early July 2017.  Id.  Further,

28   defendants argue that none of plaintiff's claims arise out of his employment agreement.

United States District Court
Northern District of California

11

Id. at 6.

The court agrees with defendants' third argument; plaintiff's breach of contract claim is not for breach of the employment agreement but for breach of the oral agreement allegedly entered into between plaintiff and defendant Cain on behalf of SP.  See Compl. ¶¶ 22, 38.  Similarly, plaintiff's fifth cause of action for fraud is also based on oral representations made by Cain, (see id. ¶ 68), and his sixth cause of action is based on defendants' failure to pay plaintiff's full compensation, (id. ¶ 77).  Plaintiff's wrongful termination claim is based on his April 2019 termination and alleged misclassification as an independent contractor.  See id. ¶ 48.  Plaintiff's remaining claims under the Labor Code claims are also based on his April 2019 termination, not the employment agreement.  Put simply, plaintiff does not allege a breach of his employment agreement and, therefore, the agreement's forum-selection clause does not apply.

Defendants contend that the independent contractor agreement between SP and plaintiff contained a forum-selection clause designating Arizona as the forum for all disputes arising out of the independent contractor agreement.  Reply at 6.  Defendants also submit evidence that they contend demonstrates "clear acquiescence" by plaintiff of the independent contractor agreement.  Id. at 5 (citing Dkt. 33-1, ¶ 6 & Ex. B).

Despite defendants' contentions, there is a factual dispute whether plaintiff accepted the independent contractor agreement.  Plaintiff contends that he accepted an oral agreement made by Cain, not the written independent contractor agreement.  Compl. ¶ 22; Jacobs Decl. ¶ 23.  Defendants contend that plaintiff agreed to the contract when he asked defendants to send the independent contractor agreement via a software program that would allow plaintiff to sign the agreement.  Yet, they have not produced an executed agreement and it is not clear that by asking for a copy of the agreement, plaintiff agreed to enter into such an agreement.  Further, plaintiff states that he does not recall signing the proposed independent contractor agreement.  Jacobs Decl. ¶ 20.  On a motion to transfer based on a forum-selection clause, a trial court draws all reasonable inferences and resolves all factual conflicts in favor of the non-moving party.  Murphy,

United States District Court
Northern District of California

1    362 F.3d at 1138.  With regard to defendants' motion to transfer venue based on a forum-

2    selection clause, the court resolves factual conflicts and draws all reasonable inferences

3    in favor of plaintiff.  Because it is not clear that plaintiff entered into the independent

4    contractor agreement, its forum-selection clause does not control venue.

5         The court next discusses whether it should grant defendants' motion to transfer

6    venue based on § 1404(a).

7              **b.      Whether the Action Could Have Been Initiated in the District of**

8                      **Arizona**

9         "In determining whether an action might have been brought in a district, the court

10   looks to whether the action initially could have been commenced in that district."  Hatch v.

11   Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).  Defendants argue that this action

12   could have been brought in the District of Arizona because both SP and Cain are located

13   in Arizona.  Mtn. at 7.  Plaintiff does not contest this argument and the court agrees that

14   this case could have been brought in the District of Arizona.

15             **c.      Whether Transfer Would Advance the Interests of Justice**

16                  **i.      Plaintiff's Choice of Forum**

17        Defendants contend that, while there is ordinarily a strong presumption in favor of

18   the plaintiff's choice of forum, where the chosen forum lacks significant contact with the

19   activities alleged in the complaint, the choice is entitled to minimum consideration.  Id.

20   Plaintiff responds that he has cited significant contacts with the Northern District of

21   California.  Opp. at 13.

22        As defendants recognize, "there is ordinarily a strong presumption in favor of the

23   plaintiff's choice of forum."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  As

24   discussed with regard to the Rule 12(b)(3) analysis, a substantial part of the underlying

25   events took place in this district and plaintiff resides in this district.  For those reasons,

26   the cases cited by defendants involving attenuated connections between the chosen

27   forum and the claims in a complaint are not persuasive.  See, e.g., Cohen v. State Farm

28   & Cas. Co., 2009 WL 2500729, at *3 (E.D. Cal. Aug. 14, 2009) (finding no contacts in the

1    Eastern District of California and noting that the plaintiffs did not become residents until

2    after much of the events underlying the complaint took place).

3            In this instance, the general rule applies; there is a strong presumption in favor of

4    plaintiff's choice of forum, "which may be overcome only when the private and public

5    interest factors clearly point towards trial in the alternative forum."  Piper Aircraft, 454

6    U.S. at 255.  This factor weighs against transfer.

7                    **ii.**        **Convenience of the Parties and Witnesses**

8            With respect to convenience of the witnesses, "[t]he relative convenience to the

9    witnesses is often recognized as the most important factor to be considered in ruling on a

10   motion under section 1404(a)."  Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D.

11   Cal. 2005) (citation omitted).  "Importantly, '[w]hile the convenience of party witnesses is

12   a factor to be considered, the convenience of non-party witnesses is the more important

13   factor.'"  Id. (alteration in original) (quoting Aquatic Amusement Assocs., Ltd. v. Walt

14   Disney World Co., 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).  "In determining whether this

15   factor weighs in favor of transfer, the court must consider not simply how many witnesses

16   each side has and location of each, but, rather, the court must consider the importance of

17   the witnesses."  Id. at 1160–61 (citations omitted).  In establishing inconvenience to

18   witnesses, the moving party must name the witnesses, state their location, and explain

19   their testimony and its relevance.  Carolina Cas. Co. v. Data Broad. Corp., 158 F. Supp.

20   2d 1044, 1049 (N.D. Cal. 2001) (citation omitted).

21           Here, defendants contend that SP's current executives, employees, and persons

22   with relevant knowledge are overwhelmingly located in Arizona.  Mtn. at 8.  They also

23   contend that Cain is a high risk for COVID-19 and travel to and from Northern California

24   would put him at risk.[3]  Id.  Plaintiff argues that defendants have failed to provide the

25   _____

26   [3] In his opposition brief, plaintiff objects to testimony from defendant Cain's son
     concerning Cain's high risk health situation as hearsay and lacking foundation.  Opp. at
27   16.  In reply, defendants provide a declaration from one of Cain's health care providers
     concerning his health condition.  Reply at 8.  Given defendants' subsequent filing, the
28   court OVERRULES plaintiff's objection.  Both parties should take note that this court will
     not hold an in-person civil jury trial while the present public health emergency exists and

1  identity of the witnesses, their location, or their anticipated testimony and its relevance.

2  Opp. at 15–16.  Plaintiff also asserts that at least one non-party witness is located in

3  Illinois, not Arizona.  Id. at 16.  In reply, defendants argue that both Thomas Cain and

4  Adam Cain are key witnesses and both live in Arizona.  Reply at 8.  They also cite

5  several other witnesses employed by SP that reside in Arizona.  Id. at 8 n.3.

6      Defendants' motion fails to list with any specificity their witnesses, locations, and

7  anticipated testimony.  The reply brief makes some attempt at listing the identities of

8  defendants' witnesses but does not explain the relevance of their testimony.  The court

9  agrees with defendants that plaintiff has also not listed the identity of any witness (other

10  than referencing a current SP client in Illinois and potential investors) nor has he

11  explained the relevance of their testimony.  This factor favors transfer, but only slightly

12  because defendants, as the moving party, have the burden of establishing transfer would

13  be appropriate.

14          **iii.        Other Factors**

15      Next, defendants argue that the interests of justice point toward to the District of

16  Arizona including ease of access to evidence, the District of Arizona is capable of

17  providing plaintiff with an adequate remedy, and the lack of contacts with the Northern

18  District of California.  Mtn. at 8–9.  Plaintiff responds that all documents in this case can

19  be produced electronically and California public policy favors adjudicating plaintiff's

20  claims in this forum.  Opp. at 17.

21      "Ease of access to evidence is generally not a predominate concern in evaluating

22  whether to transfer venue because 'advances in technology have made it easy for

23  documents to be transferred to different locations.'"  Byler v. Deluxe Corp., 222 F. Supp.

24  3d 885, 906–07 (S.D. Cal. 2016) (quoting Metz v. U.S. Life Ins. Co. in City of N.Y., 674 F.

25  Supp. 2d 1141, 1148 (C.D. Cal. 2009)).  Defendants have not attempted to quantify the

26  extent to which their documents are only available in non-electronic form in the District of

27  _____

28  expects both parties to take all necessary precautions to protect the health and well-
being of every individual associated with this litigation.

United States District Court
Northern District of California

1   Arizona; indeed, both parties have been able to attach relevant documents in support of

2   and opposition to the present motions.  Accordingly, this factor does not clearly favor

3   transfer to the District of Arizona.  With regard to whether the District of Arizona is

4   capable of providing plaintiff with an adequate remedy, the court agrees that both courts

5   are capable of applying California law.

6       Defendants do not address any "public interest factors such as court congestion,

7   local interest in deciding controversies, conflicts of laws, and burdening of citizens in an

8   unrelated forum with jury duty."  Park v. Dole Fresh Vegetables, Inc., 964 F. Supp. 2d

9   1088, 1096 (N.D. Cal. 2013) (citations omitted).  With regard to court congestion, the

10  median time to trial in the District of Arizona for the fiscal year ended September 30, 2019

11  was 36.4 months while the median time was 22.8 months in this District.  During the

12  same time period, the median time interval from inception to disposition in the District of

13  Arizona was 9.6 months while the median time in this District was 8.7 months.[4]  With

14  respect to local interest, California has a greater interest in this dispute because plaintiff's

15  claims arise under California law.  See Vuori, 2018 WL 1014633, at *21 (citing Van Slyke

16  v. Capital One Bank, 503 F. Supp. 2d 1353, 1365 (N.D. Cal. 2007)).  These unaddressed

17  factors either cut against transfer or are neutral (e.g., conflict of laws).

18      In sum, defendants have not made a "strong showing of inconvenience to warrant

19  upsetting the plaintiff's choice of forum."  PRG-Schultz USA, Inc. v. Gottschalks, Inc.,

20  2005 WL 2649206, at * 4 (N.D. Cal. Oct. 17, 2005) (quoting Decker Coal, 805 F.2d at

21  843).  Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is DENIED.

22      **3.      Motion to Dismiss for Failure to State a Claim**

23          **a.      First Claim—Breach of Contract**

24      Plaintiff's first claim is for breach of contract against SP and Cain.  To plead a

25

26  _____

27  [4] Court statistics are available on the U.S. Courts website,
    https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.  The particular
    statistics are from Table C-5 (Median Time From Filing to Disposition of Civil Cases, by
28  Action Taken) and Table T-3 (Median Time From Filings to Trial for Civil Cases in Which
    Trials Were Completed).

1

2

3

4

5

6

claim for breach of contract under California law, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  Appling v. Wachovia Mortg., FSB, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010) (quoting CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (Ct. App. 2008)).  Defendants advance two arguments why the breach of contract claim should be dismissed.

7

8

9

10

11

12

13

14

15

First, defendants argue that plaintiff fails to allege damages.  Mtn. at 9. Defendants acknowledge that plaintiff alleges that he was offered a 15% equity position in SP, which he did not receive.  Id. at 10.  They contend, however, plaintiff specifically disavowed that he was seeking specific performance to effectuate a stock transfer in a proceeding before the Delaware Court of Chancery.  Id.  Defendants further argue that plaintiff has not alleged how the promised 15% equity is compensable as monetary damages.  Plaintiff responds that even if stock is not publicly traded, it still has value and he alleged that the stock has value and defendants' breach deprived him of that value. Opp. at 18.

16

17

18

19

20

21

22

23

24

25

26

Plaintiff has plausibly stated a claim for breach of contract.  He alleges there was an oral agreement whereby he would provide services to SP in return for 15% of SP's equity and further alleges that defendants refused to effectuate transfer of that 15% equity.  It is of no moment that plaintiff does not allege the value of his equity.  What matters is that defendants allegedly promised equity in return for services, the equity has value, and plaintiff alleges defendants deprived him of that value.  It is evident from the complaint itself that SP's equity has value because plaintiff alleges that in or around April 2017, he released prior claims to equity ownership in SP in exchange for $50,000. Compl. ¶ 21.  This allegation demonstrates SP placed a monetary value on its equity in the past.  No doubt plaintiff will need to prove the amount of damages, but for purposes of Rule 12(b)(6), he plausibly states a claim.

27

28

Second, defendants argue that plaintiff does not allege that Cain was a party to the contract and, because he was acting on behalf of SP as CEO, cannot be personally

United States District Court
Northern District of California

United States District Court
Northern District of California

1    liable for breach of contract.  Mtn. at 11.  Plaintiff contends that defendant Cain both

2    individually and on behalf of SP promised to convey a 15% share of SP to plaintiff.  Opp.

3    at 19.

4    "The general rule in California is that 'only a signatory to a contract may be liable

5    for any breach.'"  St. Vincent Med. Ctr. v. Mega Life & Health Ins. Co., 585 Fed. App'x

6    417 (9th Cir. 2014) (quoting Clemens v. Am. Warranty Corp., 193 Cal. App. 3d 444, 452

7    (1987) ("Under California law, only a signatory to a contract may be liable for any

8    breach.")); see also Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n, 12 Cal. App. 4th

9    1354, 1359 (Ct. App. 1993) ("[Plaintiff] cannot assert a claim for breach of contract

10   against one who is not a party to the contract.").

11   Here, plaintiff alleges that "[i]n or about July 2017, Defendants offered Plaintiff a

12   15% equity position in SP, in consideration for the performance of Plaintiff's service to SP

13   to date, and his promise to provide services to SP in the future, which offer Plaintiff

14   accepted."  Compl. ¶ 38.  Even construing the allegations in plaintiff's favor, there are no

15   allegations that defendant Cain was a "signatory" to the agreement for plaintiff to provide

16   services to SP.  Plaintiff's complaint treats both defendants as if they are

17   interchangeable; they are not.  Any amended complaint should clearly distinguish

18   between the two defendants.

19   For the foregoing reasons, defendants' motion to dismiss plaintiff's first claim is

20   GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent plaintiff

21   alleges a breach of contract claim against defendant Cain and denied with respect to

22   defendant SP.  Because plaintiff identifies additional factual matter that he would add to

23   an amended complaint to clarify that defendant Cain was personally liable, (Opp. at 19

24   n.8), the dismissal is WITH LEAVE TO AMEND.

25                   **b.      Second Claim—Wrongful Termination**

26   Plaintiff's second claim is for wrongful termination in violation of California public

27   policy alleged against SP.  "In California, at will employees may bring a tort action for

28   wrongful discharge if their employer discharges them for a reason that violates

18

fundamental public policy." Nelson v. United Techs., 74 Cal. App. 4th 597, 608 (Ct. App. 1999) (citing Tameny v. Atl. Richfield Co., 27 Cal. 3d 167, 176 (1980); and Stevenson v. Superior Ct., 16 Cal. 4th 880, 886 (1997)).  To establish a claim of wrongful discharge in violation of public policy under California law, plaintiff must show: (1) that he was terminated from his employment, (2) that the termination was a violation of public policy, i.e., that there was a nexus between the termination and the plaintiff's status or protected activity, (3) and damages.  Turner v. Anheuser–Busch, Inc., 7 Cal. 4th 1238, 1258–59 (1994).  In general, a claim for violation of public policy does not exist against employers who have not violated the law.  Jennings v. Marralle, 8 Cal. 4th 121, 135 (1984); see also Yau v. Saint Francis Mem'l Hosp., 2015 WL 3639521, at *12 (N.D. Cal. June 11, 2015).

Defendants advance two reasons why plaintiff's second claim fails as a matter of law.  First, they assert that plaintiff's claim is not plausible because he appears to allege that he was an employee but later alleges that he was improperly misclassified as an independent contractor in connection with his seventh claim.  Mtn. at 11.  Plaintiff argues that whether he was an employee or independent contractor is a question of fact and he contends that he was an employee at all times despite defendants knowingly and willfully misclassifying him as an independent contractor.  Opp. at 20.

The court agrees with plaintiff.  His complaint alleges that, despite defendants' classification of him as an independent contractor, there are sufficient facts to demonstrate he was, in fact, an employee.  See Compl. ¶ 45.  Plaintiff later alleges that defendants violated California Labor Code § 226.8 by misclassifying him as an independent contractor.  Id. ¶ 81.  There is no inconsistency between these two allegations; plaintiff plausibly alleges that he was an employee of SP despite defendants' classification otherwise.

Second, defendants contend that plaintiff fails to allege facts establishing that SP retaliated against plaintiff for engaging in protected activity.  Mtn. at 11.  Defendants point out that plaintiff alleges that on April 16, 2019, defendants met with him and informed him that SP had terminated his existing agreement and provided him with a new agreement.

1   Plaintiff then alleges that he responded to the new agreement by informing SP that he

2   believed he was an employee and it was improper to misclassify him, he refused to sign

3   the agreement, and SP terminated him. Id. at 11–12.  Defendants contend that they

4   could not have retaliated against plaintiff because plaintiff alleges SP had already

5   terminated his current employment relationship before presenting him with a new

6   agreement. Id. at 12.  Plaintiff contends that his allegations raise a plausible inference

7   that defendants terminated him in violation of public policy based on his opposition to

8   defendants' repeated attempts to misclassify him. Opp. at 20.

9           Defendants' argument is not persuasive for two reasons.  First, plaintiff alleges

10  that he objected to SP's attempts to classify him as an independent contractor prior to the

11  April 16, 2019 meeting during which defendants ended his employment agreement.

12  Compl. ¶ 22 ("Plaintiff did not agree to the proposed reclassification"); ¶ 32 ("Thereafter,

13  notwithstanding Plaintiff's objections, SP purported to classify Plaintiff as an independent

14  contractor.").  Second, defendants conflate the purported termination of plaintiff's contract

15  on April 16, 2019 with termination of his employment relationship.  According to the

16  complaint, the parties contemplated an ongoing employment relationship after

17  termination of plaintiff's contract as evidenced by defendants offering plaintiff a new

18  contract. Id. ¶ 33.  At this stage, it is plausible that termination of plaintiff's contract did

19  not mean the end of his employment with SP and, instead, he was terminated for refusing

20  to sign the new agreement because he was misclassified as an independent contractor.

21          For the foregoing reasons, defendants' motion to dismiss plaintiff's second cause

22  of action is DENIED.

23                          **c.      Third Claim—Waiting Time Penalties**

24          Plaintiff's third claim is for waiting time penalties pursuant to California Labor Code

25  §§ 201 and 203 alleged against both defendants.  Labor Code § 201 generally requires

26  an employer to pay an employee "the wages earned and unpaid at the time of discharge."

27  Cal. Labor Code § 201(a).  Employees are awarded a penalty if an employer willfully fails

28  to pay unpaid wages pursuant to § 201.  Cal. Labor Code § 203(a).  "The plain purpose

of [Labor Code] sections 201 and 203 is to compel the immediate payment of earned wages upon a discharge.  The prompt payment of an employee's earned wages is a fundamental public policy of this state."  Kao v. Holiday, 12 Cal. App. 5th 947, 962 (Ct. App. 2017) (alteration in original) (internal quotation marks omitted) (quoting Smith v. Superior Ct., 39 Cal. 4th 77, 92 (2006)).

Defendants argue that the complaint is devoid of any allegations as to a specific time period or amalgamation of hours worked for which plaintiff was not paid.  Mtn. at 12. Plaintiff responds that the complaint alleges that he received an annual salary on a regular basis, he was never paid on an hourly or project basis, and upon termination defendants refused to pay him his owed wages.  Opp. at 21.

The court agrees with defendants that plaintiff fails to state a claim for waiting time penalties.  Plaintiff alleges that during the entirety of his employment with SP, SP paid him in monthly or bi-monthly installments.  Compl. ¶ 45.  Plaintiff also alleges that "[a]fter terminating Plaintiff, Defendants willfully refused to pay Plaintiff for his owed wages for more than 30 days."  Id. ¶ 36.  At most this would establish plaintiff received wages on a regular basis; however, there are no factual allegations concerning "when he received his final paycheck, its amount, and the amount he purportedly should have received." Bishop v. Boral Indus., Inc., 2019 WL 4261975, at *4 (S.D. Cal. Sept. 9, 2019); see also Gonzalez v. Students for Educ. Reform, Inc., 2019 WL 8108732, at *3 (C.D. Cal. Oct. 17, 2019) (dismissing claim for withheld wages where the "Plaintiff fail[ed] to identify the types of wages owed to her, how much she was owed").

Plaintiff also fails to allege sufficient facts demonstrating that defendants acted willfully; he states in conclusory fashion that defendants "willfully refused to pay Plaintiff for his owed wages for more than 30 days."  Compl. ¶ 36.  Finally, because plaintiff fails to state a claim that his employer SP violated Labor Code § 203, the court does not reach whether Cain is also liable for such a violation pursuant to Labor Code § 518.1.

For the foregoing reasons, defendants' motion to dismiss plaintiff's third claim is GRANTED.  Because plaintiff could allege additional factual matter concerning his owed

United States District Court
Northern District of California

1  wages, the dismissal is WITH LEAVE TO AMEND.

2         d.      **Fourth Claim—Failure to Reimburse Business Expenses**

3       Plaintiff's fourth claim is for failure to reimburse business expenses pursuant to

4  California Labor Code § 2802 alleged against both defendants.  California Labor Code

5  § 2802 requires an employer to "indemnify his or her employee for all necessary

6  expenditures or losses incurred by the employee in direct consequence of the discharge

7  of his or her duties, or of his or her obedience to the directions of the employer."  "Merely

8  alleging failure to reimburse unspecified work-related expenses is not enough to state a

9  Section 2802 claim."  Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016)

10  (collecting cases). "Instead, Section 2802 claims are sufficiently pled where the complaint

11  identifies the particular expenses that were not reimbursed and affirmatively alleges that

12  the expenses were part of the plaintiff's job duties."  Id. (collecting cases).

13       Defendants contend that plaintiff fails to allege that he submitted a request for

14  reimbursement of expenses that SP did not honor nor that a specific amount is owed to

15  plaintiff.  Mtn. at 14.  Plaintiff responds that the complaint alleges his job duties as

16  including identifying and soliciting potential customers for SP's services and his business

17  travel was related to those duties.  Opp. at 22.

18       In Tan v. GrubHub, Inc., 171 F. Supp. 3d at 1005 (citation omitted), the district

19  court found the plaintiffs' allegations that "they were required to bear expenses related to

20  'their vehicles, gas, parking, phone data, and other expenses'" to plausibly state a claim.

21  In Karl v. Zimmer Biomet Holdings, Inc., 2018 WL 5809428, at *9 (N.D. Cal. Nov. 6,

22  2018), the court also found persuasive allegations that the plaintiff and other putative

23  class members "were not reimbursed for their gas, smartphone and data plans, travel

24  expenses, insurance, advertising, marketing, continuing education and other professional

25  charges and expenses."  The specificity relating to the categories of expenses in those

26  two cases are similar to the allegations in plaintiff's complaint.  Plaintiff alleges that he

27  incurred expenses including

28                 (i) mileage traveled by Plaintiff in his vehicle; (ii) applicable tolls

> and parking fees; (iii) airfare to and from meetings with Cain and other SP Executives and employees, existing or potential clients and/or customers, and/or existing or potential investors; (iv) car rental costs and/or fees for ridesharing services; (v) hotel accommodations and related lodging expenses; (vi) meals and other expenses related to entertaining clients, customers, and/or investors; (vii) cellular telephone expenses.

Compl. ¶ 61.  These categories of expenses are sufficiently related to plaintiff's job duties of traveling to meet with SP executives and potential clients to plausibly state a claim.

Similar to his third claim, plaintiff alleges that Cain is also liable for the Labor Code violation pursuant to Labor Code § 558.1.  Id. ¶ 65.  California Labor Code § 558.1 provides "[a]ny employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation."  Cal. Labor Code § 558.1(a).  California courts are split on whether § 558.1, added by the California Legislature in 2016, only authorizes the Labor Commissioner to impose civil penalties or also creates a private cause of action.  See Reynolds v. Direct Flow Med., Inc., 2019 WL 1084179, at *7 (N.D. Cal. Mar. 7, 2019) (describing split).

The court need not weigh in on whether § 558.1 authorizes a private right of action because plaintiff fails to allege factual matter concerning individual wrongdoing by Cain as opposed to SP.  See Roush v. MSI Inventory Serv. Corp., 2018 WL 3637066, at *3 (E.D. Cal. July 30, 2018) (Section 558.1 "expressly expands liability to include owners of an employer when those owners have violated the enumerated sections of the Labor Code.").  While plaintiff alleges substantial factual matter relating to the ongoing business relationship between him and defendant Cain, the complaint is devoid of any factual allegations concerning Cain's role in SP's failure to reimburse business expenses owed to plaintiff.  Rather, plaintiff alleges that Cain had plenary authority and control over the SP employees who implemented the unlawful directive to deprive plaintiff's reimbursement claims.  Compl. ¶ 65.  Yet, there are no factual allegations to substantiate

23

1    this conclusory allegation.

2        For the foregoing reasons, defendants' motion to dismiss plaintiff's fourth claim is

3    DENIED with respect to defendant SP and GRANTED with respect to defendant Cain.

4    Because plaintiff could allege additional facts relating to Cain's conduct, the dismissal is

5    WITH LEAVE TO AMEND.

6            **e.      Fifth Claim—Fraud/False Promise/Intentional Misrepresentation**

7        Plaintiff's fifth claim is for fraud or false promise or intentional misrepresentation

8    against both defendants.  "The elements of a cause of action for fraud in California are:

9    '(a) misrepresentation (false representation, concealment, or nondisclosure); (b)

10   knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

11   justifiable reliance; and (e) resulting damage.'"  Kearns, 567 F.3d at 1126 (quoting

12   Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974 (1997)).  The pleading

13   requirements of Rule 9(b) apply, at least with respect to the first element of the fraud

14   claim.

15       Defendants argue that plaintiff's claim is barred by the economic loss rule.  Mtn. at

16   15.  According to defendants, plaintiff's fraud claim is premised on Cain's representation

17   that SP would grant plaintiff a 15% ownership interest in SP and that he was harmed by

18   defendants' failure to convey the ownership interest.  Id.  Defendants contend that these

19   allegations are the same as plaintiff's first claim for breach of contract and he cannot

20   recover in tort because of the economic loss rule.  Id.  Plaintiff argues that California

21   courts permit recovery of tort damages in contract cases, such as where the tort liability

22   arises from a duty independent of the contract or where the conduct is both intentional

23   and intended to harm.  Opp. at 24–25.

24       As a general rule, "courts will generally enforce the breach of a contractual

25   promise through contract law, except when the actions that constitute the breach violate

26   a social policy that merits the imposition of tort remedies."  Robinson Helicopter Co. v.

27   Dana Corp., 34 Cal. 4th 979, 991–92 (2004) (quoting Freeman & Mills, Inc. v. Belcher Oil

28   Co., 11 Cal. 4th 85, 107 (1995) (Mosk, J., concurring in part)).  The economic loss rule

"requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Id. at 988 (citation omitted). "Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." Id. (citing Jimenez v. Superior Court, 29 Cal. 4th 473, 482 (2002)). The purpose of the economic loss rule is to "prevent[] the law of contract and the law of tort from dissolving one into the other." Id. (citation omitted).

"In summary, the fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." Oracle USA, Inc. v. XL Glob. Servs., Inc., 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009). There are, however, exceptions to that rule include: "a breach of duty causes a physical injury; the covenant of good faith and fair dealing is breached in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or a contract was fraudulently induced." Id. (citing Butler–Rupp v. Lourdeaux, 134 Cal. App. 4th 1220 (2005)); see also Erlich v. Menezes, 21 Cal. 4th 543, 553–54 (1999) ("Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated.").

As a general matter, the court understands that plaintiff seeks to avail himself of the fraudulent inducement exception to the economic loss rule. Opp. at 25; see, e.g., Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc., 868 F. Supp. 2d 983, 992 (E.D. Cal. 2012) ("Pursuant to the fraudulent inducement exception, courts have declined to apply the economic loss rule in cases where a false statement causes a party to enter a contract."). In their reply brief, defendants argue that numerous courts have applied the economic loss doctrine to bar fraudulent inducement claims. Reply at 12. Yet, district courts in this circuit are split on the very proposition defendants seek to assert. As described by the court in R Power Biofuels, LLC v. Chemex LLC, "[s]ome district courts in

this circuit have held that promissory fraud is insufficient if the promise becomes part of an enforceable contract."  2017 WL 1164296, at *6 (N.D. Cal. Mar. 29, 2017) (citing JMP Sec. LLP v. Altair Nanotechnologies Inc., 880 F. Supp. 2d 1029, 1044 (N.D. Cal. 2012)). Indeed, one of the cases cited in defendants' reply brief, UMG Recordings Inc. v. Global Eagle Entertainment, Inc., 117 F. Supp. 3d 1092, 1105–06 (C.D. Cal. 2015), arrives at this conclusion.  "In contrast, other district courts have held that an adequately pled promissory fraud claim that induces the formation of a contract is sufficient to trigger the fraudulent inducement exception to the economic loss rule."  R Power Biofuels, 2017 WL 1164296, at *6 (citing Joli Grace, LLC v. Country Visions, Inc., 2016 WL 6996643, at *9 n.6 (E.D. Cal. Nov. 30, 2016); and J2 Cloud Servs., Inc. v. Fax87, 2016 WL 6833904, at *4 (C.D. Cal. Nov. 18, 2016)).

Significantly, the California Supreme Court has held that:

> An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.  In such cases, the plaintiff's claim does not depend on whether the defendant's promise is ultimately enforceable as a contract.  If it is enforceable, the [plaintiff] . . . has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract.

Lazar v. Superior Ct., 12 Cal. 4th 631, 638 (1996) (alterations in original) (emphasis added) (internal quotation marks and citations omitted).  Given Lazar's statement that a claim for promissory fraud does not depend on whether a defendant's promise is ultimately enforceable as a contract, the court finds persuasive the reasoning of R Power Biofuels and other courts, see, e.g., SVGRP LLC v. Sowell Fin. Servs., LLC, 2019 WL 652890, at *13 (N.D. Cal. Feb. 15, 2019), that found a promissory fraud claim for fraudulent inducement as sufficient to trigger an exception to the economic loss rule.

Of course, this is only part of the equation because plaintiff must adequately allege that the promissory fraud induced him to enter a new or modified contract, R Power Biofuels, 2017 WL 1164296, at *7, and those allegations must meet the heightened pleading standard of Rule 9(b).  The elements of promissory fraud are:

> (1) a promise made regarding a material fact without any

26

1

2

3

intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e].

4

5

Behnke v. State Farm Gen. Ins. Co., 196 Cal. App. 4th 1443, 1453 (Ct. App. 2011) (citing Muraoka v. Budget Rent–A–Car, 160 Cal. App. 3d 107, 119 (Ct. App. 1984)).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Plaintiff alleges that defendant Cain, in conversations with plaintiff in early July 2017, represented to plaintiff that he would grant plaintiff a 15% ownership interest in SP but Cain knew the representation to be false and did not intend to fulfill it. Compl. ¶¶ 68–69. After the parties allegedly entered into an oral agreement for the 15% equity stake, Cain represented to investment groups that he and plaintiff combined to own nearly 100% of SP. Id. ¶ 25. Plaintiff repeatedly asked Cain to reduce their verbal agreement to writing, (id. ¶ 26), and Cain repeatedly assured plaintiff that an agreement would be forthcoming, (id. ¶ 27). The repeated assurances by Cain coupled with the failure to actually reduce the agreement to writing plausibly meets the intent element. Plaintiff further alleges that he relied on Cain's representation by continuing to work for SP and expending personal resources on his efforts to attract potential investors and clients. Id. ¶¶ 28, 70. This demonstrates reliance by plaintiff and plausibly states a claim for promissory fraud. Because plaintiff can rely on the fraudulent inducement exception, the economic loss rule does not bar plaintiff's claim at this stage.

20

21

22

23

24

25

26

Separately, defendants argue that plaintiff does not allege any conduct suggesting Cain was acting in a role other than SP's CEO and, because he was acting in the scope of his employment, the claim against him should be dismissed. Mtn. at 16. "Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation."[5] U.S. Liab. Ins. Co. v. Haidinger-Hayes,

27

28

[5] In dicta, the California Supreme Court also stated: "[l]iability imposed upon agents for active participation in tortious acts of the principal have been mostly restricted to cases

United States District Court
Northern District of California

1    Inc., 1 Cal. 3d 586, 595 (1970) (citation omitted).

2         Here, plaintiff alleges that defendant Cain personally participated in the promissory

3    fraud by promising plaintiff he would grant plaintiff a 15% ownership interest in SP.

4    Compl. ¶ 68.  Defendants cite no other reason to dismiss the claim against Cain and

5    personal participation is sufficient to state a claim that a corporate officer is liable for torts

6    in which he was personally involved.

7         For the foregoing reasons, defendants' motion to dismiss plaintiff's fifth claim is

8    DENIED.

9                   **f.        Sixth Claim—Quantum Meruit**

10        Plaintiff's sixth claim is for quantum meruit alleged against both defendants.  "To

11   prevail on a claim for quantum meruit, [plaintiff] must show: (1) that he performed certain

12   services for [defendants]; (2) that the services were rendered at [defendants'] request;

13   and (3) that they are unpaid.  Swafford v. Int'l Bus. Machines Corp., 408 F. Supp. 3d

14   1131, 1149 (N.D. Cal. 2019) (citing Summit Estate, Inc. v. Cigna Healthcare of Cal. Inc.,

15   2017 WL 4517111, at *11 (N.D. Cal. Oct. 10, 2017)); accord Haggerty v. Warner, 475,

16   252 P.2d 373, 377 (Cal. Ct. App. 1953).

17        Defendants argue that while plaintiff may plead alternative theories, he may not

18   allege the existence of an enforceable contract and at the same time allege a claim for

19   quasi contract.  Mtn. at 16.  They also contend that the quantum meruit claim fails

20   because plaintiff cannot allege SP did not pay him for his services.  Id.  In response,

21   plaintiff cites cases that permitted quantum meruit claims to be pled in the alternative.

22   Opp. at 26.

23        As a general matter, Federal Rule of Civil Procedure 8(d)(3) permits a party to

24   _____

25   involving physical injury, not pecuniary harm, to third persons."  Haidinger-Hayes, 1 Cal.
     3d at 595 (citation omitted).  A few district courts have questioned this dicta, citing later
26   statements by California courts that, for example, "[a]n agent or employee is always liable
     for his own torts, whether his employer is liable or not."  E.g., Bear Valley Family v. Bank
27   Midwest, N.A., 2010 WL 3369600, at *4 (C.D. Cal. Aug. 23, 2010) (quoting Shafer v.
     Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 107 Cal. App. 4th 54, 68 (Ct.
28   App. 2003).  Neither party has briefed this issue and defendants may renew their
     argument at a later stage.

United States District Court
Northern District of California

state as many separate claims or defenses as it has, regardless of consistency.  Whether a plaintiff can allege both a breach of contract claim and a quantum meruit claim implicates this Rule.  It is clear that if plaintiff prevails on his breach of contract claim, then he cannot prevail on a quantum meruit claim regarding the same subject matter.  See Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1388 (Ct. App. 2012) ("A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter.").  "Thus, if a plaintiff was uncertain as to whether the parties had entered into an enforceable agreement, the plaintiff would be entitled to plead inconsistent claims predicated on both the existence and absence of such an agreement."  Id.

Both California courts and federal district courts sitting in diversity have determined that, even though a plaintiff can allege multiple theories of recovery, to pursue a quantum meruit claim, "a plaintiff may not plead the existence of an enforceable contract and maintain a quasi-contract claim at the same time, unless the plaintiff has pled facts suggesting that the contract may be unenforceable or invalid."  Schulz v. Cisco Webex, LLC, 2014 WL 2115168, at *5 (N.D. Cal. May 20, 2014) (citing Klein, 202 Cal. App. 4th at 1389; and World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc., 2014 WL 1411249, at *2 (N.D. Cal. Apr. 11, 2014)); see also Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., 94 Cal. App. 4th 151, 173–74 (Ct. App. 2001).

Here, plaintiff's quantum meruit claim does not allege facts suggesting that the express contract may be unenforceable or invalid.  Indeed, in his opposition, plaintiff requests that, should it be necessary, the court permit him leave to amend to the quantum meruit claim.  Since plaintiff has identified alternative factual allegations that he would allege in an amended complaint, the court will dismiss his claim with leave to amend.

Defendants argue that, nonetheless, the dismissal should be with prejudice because plaintiff alleges he was paid his base salary and thus cannot allege he was unpaid.  Reply at 13.  It is not clear that third element of a quantum meruit claim requires

a plaintiff in every instance to receive no payment at all in order to state a claim.[6]

Quantum meruit is an equitable remedy and "[t]he underlying idea behind quantum meruit

is the law's distaste for unjust enrichment.  If one has received a benefit which one may

not justly retain, one should 'restore the aggrieved party to his [or her] former position by

return of the thing or its equivalent in money.'"  Maglica v. Maglica, 66 Cal. App. 4th 442,

449 (Ct. App. 1998) (alteration in original) (citation omitted).  Thus, "[t]he measure of

recovery in quantum meruit is the reasonable value of the services rendered provided

they were of direct benefit to the defendant."  Id. (quoting Palmer v. Gregg, 65 Cal. 2d

657, 660 (1967)).  In this case, plaintiff alleges that the parties did not contemplate that

his base salary would constitute his full compensation for services performed, as

evidenced in part by the 15% equity stake in SP.  Compl. ¶ 75.  If plaintiff were to prove

that defendants were unjustly enriched based on the reasonable value of his services,

then he could recover on that theory.

Finally, defendants argue that the claim should be dismissed as to defendant Cain

because plaintiff does not allege he was acting outside the scope of his employment.

Mtn. at 17.  The court agrees with defendants.  Plaintiff has not alleged what services he

rendered that directly benefited Cain as opposed to benefitting SP.  In any amended

complaint, plaintiff must distinguish between services that directly benefitted Cain, as

opposed to services that benefitted SP.

For the foregoing reasons, defendants' motion to dismiss plaintiff's sixth claim is

GRANTED and the dismissal is WITH LEAVE TO AMEND.

### g.  Seventh Claim—PAGA Civil Penalties

Plaintiff's seventh claim is for PAGA civil penalties alleged against both

defendants.  "Under PAGA, an 'aggrieved employee' may file a representative action 'on

behalf of himself or herself and other current and former employees' to recover civil

penalties for violations of the Labor Code that otherwise would be assessed and

---

[6] Defendants cite no case for their proposition and if plaintiff continues to allege a quantum meruit claim, defendants may renew their argument with appropriate citations.

1   collected by the Labor and Workforce Development Agency" ("LWDA"). Khan v. Dunn-

2   Edwards Corp., 19 Cal. App. 5th 804, 808 (Ct. App. 2018) (citation omitted). "Before

3   bringing a PAGA claim, a plaintiff must comply with administrative procedures outlined in

4   section 2699.3, requiring notice to the [LWDA] and allowing the employer an opportunity

5   to cure unspecified violations not listed in section 2699.5." Id. at 808–09 (citation

6   omitted); see Cal. Labor Code § 2699.3. A plaintiff must provide notice to the employer

7   and LWDA of the "specific provisions of [the Labor Code] alleged to have been violated,

8   including the facts and theories to support the alleged violation." Id. at 809 (alteration in

9   original) (internal quotation marks omitted) (quoting Williams v. Superior Ct., 3 Cal.5th

10  531, 545 (2017)).

11      Defendants argue that plaintiff's notice to the LWDA failed to provide sufficient

12  details, in particular the claims referencing unpaid business expenses suffers from the

13  same factual shortcoming in plaintiff's third and fourth claims. Mtn. at 18. Defendants

14  also contend that the claim against Cain should be dismissed because plaintiff fails to

15  allege that Cain took specific actions that would entitle plaintiff to relief. Id. Plaintiff

16  argues that his notice letter contains sufficient facts and theories to satisfy section

17  2699.3(a)(1). Opp. at 27.

18      Defendants' argument is without merit. In Amey v. Cinemark USA Inc., 2015 WL

19  2251504, at *13, 15 (N.D. Cal. May 13, 2015), the district court found that the plaintiffs

20  failed to exhaust their administrative remedies under the PAGA because their notice

21  letter did "no more than recite the language" of the Labor Code and '[p]arroting the

22  statute that was violated is insufficient to provide notice under Section 2699.3." On

23  appeal, the Ninth Circuit reversed citing the California Supreme Court's holding in

24  Williams v. Superior Court. Brown v. Cinemark USA, Inc., 705 Fed. App'x 644, 645 (9th

25  Cir. 2017). In Williams, the court stated "[n]othing in Labor Code section 2699.3,

26  subdivision (a)(1)(A), indicates the 'facts and theories' provided in support of 'alleged'

27  violations must satisfy a particular threshold of weightiness, beyond the requirements of

28  nonfrivolousness generally applicable to any civil filing." 3 Cal. 5th at 545 (citation

United States District Court
Northern District of California

1   omitted).  The purpose of the notice letter is to provide the LWDA the opportunity to

2   decide wither to allocate resources for an investigation and notice to the employer allows

3   it to submit a response to the agency.  "Neither purpose depends on requiring employees

4   to submit only allegations that can already be backed by some particular quantum of

5   admissible proof."  Id. at 546.

6           In light of Williams, plaintiff's notice letter[7] easily passes muster.  The letter

7   contains sufficient factual allegations to put both the LWDA and defendants on notice as

8   to the nature of plaintiff's Labor Code claims.  However, a PAGA claim is "predicated on

9   Plaintiff first establishing Defendant[s] violated the Labor Code."  Amiri v. Cox Commc'ns

10  California, LLC, 272 F. Supp. 3d 1187, 1193 (C.D. Cal. 2017) (citing Arias v. Superior Ct.,

11  46 Cal. 4th 969, 987 (2009)).  Thus, to the extent that plaintiff fails to allege Labor Code

12  violations with regard to his third and fourth claims, he cannot state a claim under the

13  PAGA.  Because the court grants leave to amend those portions of the Labor Code

14  claims that fail to state a claim, the dismissal here is without prejudice.

15          For the foregoing reasons, defendants' motion to dismiss is GRANTED with

16  respect to the underlying Labor Code claims that have been dismissed and DENIED in all

17  other respects.  The dismissal of plaintiff's seventh claim is WITHOUT PREJUDICE.

                                    **CONCLUSION**

19          For the foregoing reasons, defendants' motion to dismiss pursuant to Rule

20  12(b)(3) is DENIED and defendants' motion to transfer is DENIED.  Defendants' Rule

21  12(b)(6) motion to dismiss plaintiff's first cause of breach of contract as alleged against

22  SP is DENIED and as alleged against Cain is GRANTED, and the claim is DISMISSED

23  WITH LEAVE TO AMEND; defendants' motion to dismiss plaintiff's second cause of

24  action for wrongful termination is DENIED; defendants' motion to dismiss plaintiff's third

25  cause of action for waiting time penalties is GRANTED, and the claim is DISMISSED

---

[7] Defendants attach the notice letter as an exhibit to their motion.  Because plaintiff referenced the letter in his complaint, (Compl. ¶ 85), and does not dispute its authenticity, the court may rely on the exhibit without converting defendants' motion to dismiss into a motion for summary judgment.  See Sanders, 504 F.3d at 910.

WITH LEAVE TO AMEND; defendants' motion to dismiss plaintiff's fourth cause of action for failure to reimburse business expenses as alleged against SP is DENIED and as alleged against Cain is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND; defendants' motion to dismiss plaintiff's fifth cause of action for fraud is DENIED; defendants' motion to dismiss plaintiff's sixth cause of action for quantum meruit is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND; and defendants' motion to dismiss plaintiff's seventh cause of action for PAGA civil penalties is GRANTED IN PART AND DENIED IN PART, and the claim is DISMISSED WITHOUT PREJUDICE.  Plaintiff shall file any amended complaint within 21 days of the date of this order.  No new parties or causes of action may be pleaded without leave of court or the agreement of all defendants.

**IT IS SO ORDERED.**

Dated: September 18, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge