FENNEMORE CRAIG, P.C.
Jessica L. Post (CA Bar No. 247874)
Emily Ward (AZ Bar No. 029963)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Facsimile: (602) 916-5999
Email: jpost@fennemorelaw.com
Email: eward@fennemorelaw.com

*Attorneys for Defendants Sustainability Partners LLC and Thomas E. Cain and Counterclaimant Sustainability Partners LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOEL RAY JACOBS,<br><br>   Plaintiff,<br><br>v.<br><br>SUSTAINABILITY PARTNERS LLC, et al.,<br><br>   Defendants. | Case No. 4:20-cv-01981-PJH<br><br>**FIRST AMENDED ANSWER AND COUNTERCLAIM**<br><br>**JURY TRIAL DEMANDED**<br><br>Assigned to the Honorable Phyllis J. Hamilton |

For their First Amended Answer to Plaintiff Joel Ray Jacobs' ("Jacobs") First Amended Complaint, Defendants Sustainability Partners LLC ("SP") and Thomas E. Cain ("Cain") (collectively, "Defendants") allege as follows:

**NATURE OF THE ACTION**

1. Defendants state that Paragraph 1 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 1.

2. Defendants deny the allegations in Paragraph 2.

**PARTIES**

3. Defendants admit the allegations in Paragraph 3.

4. Defendants admit the allegations in Paragraph 4.

5. Defendants admit the allegations in Paragraph 5.

6. Responding to Paragraph 6, Defendants state that this Paragraph asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 6.

7. Responding to Paragraph 7, Defendants state that this Paragraph asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 7.

**JURISDICTION AND VENUE**

8. Defendants admit that this Court has subject matter jurisdiction based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Defendants deny the remaining allegations in Paragraph 8.

9. Defendants deny the allegations in Paragraph 9.

10. Defendants deny the allegations in Paragraph 10.

**FACTS**

11. Defendants lack sufficient information or knowledge to admit or deny the allegations contained in Paragraph 11, and therefore deny such allegations.

12. Defendants admit the allegations in Paragraph 12.

13. Defendants deny the allegations in Paragraph 13.

14. Defendants deny the allegations in Paragraph 14.

15. Defendants deny the allegations in Paragraph 15.

16. Defendants admit that SP and Jacobs executed an Employment Agreement on August 22, 2016. Defendants further admit that the Employment Agreement provided for a base salary of $300,000 per year, a one-time signing bonus equal to 10% of the base salary, and eligibility for an annual discretionary bonus. Defendants also admit that SP and Jacobs executed an Equity Grant Agreement on August 22, 2016, which provided Jacobs with 471 Class C Units in SP, subject to four vesting periods. Defendants affirmatively allege that the Equity Grant Agreement provided that all vesting of C Units immediately ceased upon the end of Jacobs' employment with SP. Defendants deny the remaining allegations in Paragraph 16.

17. Defendants admit that Jacobs' duties when he was an SP employee included identifying and soliciting potential customers for SP's services and managing SP's sales force from August 2016 through June 2017. Defendants deny the remaining allegations in Paragraph 17.

18. Defendants deny the allegations in Paragraph 18.

19. Defendants deny the allegations in Paragraph 19.

20. Defendants deny the allegations in Paragraph 20.

21. Defendants admit that SP and Jacobs amended the Employment Agreement on April 12, 2017 with Amendment No. 1. Defendants further admit that Amendment No. 1 provided Jacobs with a $50,000 retention bonus in exchange for modifying several provisions in the Employment Agreement and for a full release of all claims against SP. Defendants deny the remaining allegations in Paragraph 21.

22. Defendants admit that SP terminated the Employment Agreement on June 30, 2017. Defendants deny the remaining allegations in Paragraph 22.

23. Defendants deny the allegations in Paragraph 23.

24. Defendants deny the allegations in Paragraph 24.

25. Defendants deny the allegations in Paragraph 25.

26. Defendants deny the allegations in Paragraph 26.

27. Defendants deny the allegations in Paragraph 27.

28. Defendants deny the allegations in Paragraph 28.

29. Defendants deny the allegations in Paragraph 29.

30. Defendants lack sufficient information or knowledge to admit or deny the allegations contained in Paragraph 30 and therefore deny such allegations.

31. Defendants deny the allegations in Paragraph 31.

32. Defendants deny the allegations in Paragraph 32.

33. Defendants admit that Cain and SP's Chief Administrative Officer, Adam Cain, presented Jacobs with an Authorized Development Partner Agreement on or around April 16, 2019. Defendants deny the remaining allegations in Paragraph 33.

34. Defendants admit that at the start of the meeting between Adam Cain and Jacobs,

Adam Cain told Jacobs that SP was terminating his independent contractor agreement. Defendants deny the remaining allegations in Paragraph 34.

35. Defendants deny the allegations in Paragraph 35.

36. Defendants deny the allegations in Paragraph 36.

37. Defendants deny the allegations in Paragraph 37.

38. Defendants admit that SP wired $16,600.00 to Jacobs on or about June 4, 2019. Defendants deny the remaining allegations in Paragraph 38.

39. Defendants deny the allegations in Paragraph 39.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**
**(Against Defendant SP Only)**

40. Defendants state that Paragraph 40 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 40.

41. Defendants deny the allegations in Paragraph 41.

42. Defendants deny the allegations in Paragraph 42.

43. Defendants deny the allegations in Paragraph 43.

**SECOND CAUSE OF ACTION**
**Wrongful Termination in Violation of California Public Policy**
**(Against Defendant SP Only)**

44. SP states that Paragraph 44 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, SP denies the allegations in Paragraph 44.

45. SP states that Paragraph 45 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, SP denies the allegations in Paragraph 45.

46. SP states that Paragraph 46 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, SP denies the allegations in Paragraph 46.

47. SP admits that it and Jacobs executed an Employment Agreement on August 22,

1  2016.  SP affirmatively alleges, however, that on June 30, 2017, the parties terminated the Employment Agreement.  SP denies the remaining allegations in Paragraph 47.

48. SP denies the allegations in Paragraph 48, including its subparts.

49. SP admits that SP's Chief Administrative Officer Adam Cain presented Jacobs with an Authorized Development Partner Agreement on or around April 16, 2019.  SP denies the allegations in Paragraph 49.

50. SP denies the allegations in Paragraph 50.

51. SP admits that at the start of the meeting between Adam Cain and Jacobs on April 16, 2019, Adam Cain told Jacobs that SP had terminated his independent contractor agreement as of April 16, 2019.

52. SP denies the allegations in Paragraph 52.

53. SP denies the allegations in Paragraph 53.

54. SP denies the allegations in Paragraph 54.

55. SP denies the allegations in Paragraph 55.

**THIRD CAUSE OF ACTION**
**Waiting Time Penalties**
**(Violation of California Labor Code §§ 201, 203)**
**(Against Defendant SP Only)**

56. SP states that Paragraph 56 asserts only legal opinions or conclusions, not factual assertions requiring a response.  To the extent a response is required, SP denies the allegations in Paragraph 56.

57. SP states that Paragraph 57 asserts only legal opinions or conclusions, not factual assertions requiring a response.  To the extent a response is required, SP denies the allegations in Paragraph 57.

58. SP denies the allegations in Paragraph 58.

59. SP denies the allegations in Paragraph 59.

**FOURTH CAUSE OF ACTION**
**Failure to Reimburse Business Expenses**
**(Violation of California Labor Code § 2802)**
**(Against Defendant SP Only)**

60. SP states that Paragraph 60 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, SP denies the allegations in Paragraph 60.

61. SP states that Paragraph 61 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, SP denies the allegations in Paragraph 61.

62. SP denies the allegations in Paragraph 62.

63. SP denies the allegations in Paragraph 63.

64. SP denies the allegations in Paragraph 64.

65. SP denies the allegations in Paragraph 65.

66. SP denies the allegations in Paragraph 66.

67. SP denies the allegations in Paragraph 67.

**FIFTH CAUSE OF ACTION**
**Fraud/False Promise/Intentional Misrepresentation**
**(Against All Defendants)**

68. Defendants state that Paragraph 68 asserts only legal opinions or conclusions, not factual assertions requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 68.

69. Defendants deny the allegations in Paragraph 69.

70. Defendants deny the allegations in Paragraph 70.

71. Defendants deny the allegations in Paragraph 71.

72. Defendants deny the allegations in Paragraph 72.

73. Defendants deny the allegations in Paragraph 73.

**SIXTH CAUSE OF ACTION**
*Quantum Meruit*
**(Against Defendant SP Only)**

74. SP states that Paragraph 74 asserts only legal opinions or conclusions, not factual

1 assertions requiring a response.  To the extent a response is required, SP denies the allegations in Paragraph 74.

75. SP admits that between August 22, 2016, and June 30, 2017, Jacobs performed services pursuant to his employment with SP.  SP denies the remaining allegations in Paragraph 75.

76. SP denies the allegations in Paragraph 76.

77. SP admits that it has refused to transfer 15% of SP's equity to Jacobs because there was no agreement to do so.  SP denies the remaining allegations in Paragraph 77.

78. SP denies the allegations in Paragraph 78.

79. SP states that Paragraph 79 asserts only Jacobs' legal theories for relief, not factual assertions requiring a response.  To the extent a response is required, SP denies the allegations in Paragraph 79.

**SEVENTH CAUSE OF ACTION**
**Recovery of Civil Penalties Under the California Labor Code**
**Private Attorney General Act ("PAGA")**
**(Violation of California Labor Code § 2698 *et seq.*)**
**(Against Defendant SP Only)**

80. SP states that Paragraph 80 asserts only legal opinions or conclusions, not factual assertions requiring a response.  To the extent a response is required, SP denies the allegations in Paragraph 80.

81. SP states that Paragraph 81 asserts only Jacobs' legal theories for relief, not factual assertions requiring a response.  To the extent a response is required, SP denies the allegations in Paragraph 81.

82. SP states that Paragraph 82 asserts only Jacobs' legal theories for relief, not factual assertions requiring a response.  To the extent a response is required, SP denies the allegations in Paragraph 82.

83. SP admits that on March 19, 2020, Jacobs, though counsel, sent a letter alleging violations of the California Labor Code.  SP lacks sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 83, and therefore denies such allegations.

84. SP admits the allegations in Paragraph 84.

85. SP lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 85, and therefore denies such allegations.

86. SP lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 86, and therefore denies such allegations.

87. SP denies any and all allegations not expressly admitted herein.

## AFFIRMATIVE DEFENSES

1. Jacobs' Complaint, in whole or part, fails to state a claim upon which relief can be granted.

2. Defendants affirmatively allege that Jacobs' claims are barred by accord and satisfaction.

3. Defendants affirmatively allege that Jacobs' claims are barred by failure of consideration.

4. Defendants affirmatively allege that Jacobs' claims are barred by the general release Jacobs agreed to when he executed Amendment No. 1 to his Employment Agreement.

5. Defendants affirmatively allege that Jacobs' claims relating to the alleged 15% equity in SP are barred by the statute of frauds, including Cal. Civil Code § 1624.

6. Defendants affirmatively allege that there was no meeting of the minds on any alleged promise to provide 15% equity in SP.

7. Defendants affirmatively allege that the alleged promise to provide 15% equity in SP was impossible to provide because SP has an operating agreement that specifically governs the different classes of equity and the steps necessary in order to provide equity to a particular individual.

8. Defendants affirmatively allege that Jacobs should be equitably estopped from claiming that he was promised to be provided with 15% equity in SP. Jacobs affirmatively requested that he be paid with money instead of receiving equity in the Company.

9. Defendants affirmatively allege that SP's decision to end its working relationship with Jacobs was based on legitimate, non-discriminatory reasons. On April 16, 2019, SP terminated its current agreement with Jacobs because Jacobs was not performing – despite receiving over

$300,000, he had not delivered any customers. Then, after offering Jacobs the opportunity to continue his relationship with SP as an Authorized Development Partner, SP believes that Jacobs contacted an SP client and tried to solicit the client to give its business to a different company and disparaged SP at the same time (this was also not the first time that Jacobs had intentionally disparaged and harmed SP). Upon learning that information, SP withdrew the Authorized Development Partner Agreement.

10. Jacobs engaged in conduct disloyal to SP and in contravention to promises that Jacobs made to SP under the Confidentiality Agreement and the Independent Contractor Agreement.

11. Defendants interacted in good faith and reasonably at all times with Jacobs, including when it paid Jacobs the final amount Jacobs claimed was due under the Independent Contractor Agreement.

12. SP believed in good faith that Jacobs was correctly classified as an independent contractor.

13. Jacobs is not entitled to recovery of punitive damages because all relevant actions taken by Defendants were in good faith and without malice or reckless indifference or disregard for any right of Jacobs.

14. Jacobs' claim for quantum meruit fails in whole or in part because his compensation of $300,000 was established by an actual agreement between the parties.

15. Defendants have paid for all expenses submitted by Jacobs to SP for payment.

16. Jacobs failed to follow SP's process for seeking pre-approval of expenses and then submitting documentation of expenses incurred.

17. To the extent Jacobs has suffered any damages as a result of any action by Defendants (which liability is expressly denied), Jacobs had failed to mitigate any or all of his alleged damages. Furthermore, to the extent Jacobs has received (or with reasonable diligence could have received) income from other sources for the period of time he alleges a loss of income, such amount should be offset against, and should reduce, any alleged damages Jacobs seeks to obtain from Defendants.

1      18.     Jacobs' claims are barred, in whole or in part, by the applicable statute of limitations.

2      WHEREFORE, Defendants request

3      A.      That Jacobs take nothing by reason of the Complaint, and that Defendants be dismissed hence;

5      B.      To the extent to which law, equity, or contract allows, for reasonable attorneys' fees;

6      C.      For costs of suit incurred herein; and

7      D.      For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

1.     Counterclaimant Sustainability Partners, LLC ("SP") is a Delaware corporation with its principal place of business in Tempe, Arizona.

2.     Counterdefendant Jay Jacobs ("Jacobs") is a resident of California.

3.     This Court can exercise jurisdiction under 28 U.S.C. § 1367(a) over SP's compulsory counterclaim as it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.

4.     Moreover, the damages asserted in SP's counterclaim exceed the $75,000 amount-in-controversy requirement for this Court to exercise subject-matter jurisdiction.

### Factual Allegations

5.     Sometime in August 2016, Jacobs and SP executed At-Will Employment, Confidential Information, and Invention Assignment Agreement (the "Confidentiality Agreement").

6.     The Confidentiality Agreement required Jacobs to hold "in the strictest confidence" and "take all reasonable precautions to prevent any unauthorized use or disclosure" of any Company Confidential Information, defined as information that SP "has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not generally known and which the Company wishes to maintain as confidential." Confidentiality Agreement § 2.B.

7.     The Confidentiality Agreement required Jacobs to hold "in the strictest confidence" and "take all reasonable precautions to prevent any unauthorized use or disclosure" of any

Company Confidential Information during **and** after his employment with SP. In fact, the Agreement stated that Jacobs "underst[ood] that [his] obligations under Section 2.B [of the Confidentiality Agreement] shall continue after termination of [his] employment." Confidentiality Agreement § 2.B.

8. Upon information and belief, Jacobs used SP confidential information to create his own business to compete with SP.

9. The Confidentiality Agreement further required Jacobs to "immediately deliver to the Company, and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information, Associated Third Party Confidential Information, all Company equipment including all Company Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such property, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items, including, without limitation, those records maintained pursuant to Section 3.D" "upon separation from employment with [SP] or upon the Company's request at any other time." Confidentiality Agreement § 5.B.

10. The Confidentiality Agreement further required Jacobs to "make a prompt and reasonable search" for Company Confidential Information on his personal Electronic Media Equipment or personal Electronic Media Systems to locate any Company Confidential Information on them. If Jacobs discovered Company Confidential Information on his personal Electronic Media Equipment or personal Electronic Media Systems, he is required to notify SP of that fact, provide SP with a computer-useable copy of all such Company information from his equipment and systems, and cooperate reasonably with SP to verify that the necessary copying is completed (including, upon request providing a sworn declaration confirming the return of property and deletion of information). Confidentiality Agreement § 5.D.

11. Under the Confidentiality Agreement, Jacobs agreed that he had "no expectation of privacy as to any personal Electronic Media Equipment or personal Electronic Media Systems that

1  [he] had used for [SP's] purposes."  To that end, Jacobs agreed that SP "in its sole discretion, may
2  have access to such personal Electronic Media Equipment or personal Electronic Media Systems
3  to retrieve, destroy, or ensure the permanent deletion of Company information form such equipment
4  or systems." Confidentiality Agreement § 5.E.

5  12.  Jacobs agreed to an "audit to confirm [his] compliance" with Section 5 of the
6  Confidentiality Agreement (addressing the return of SP's materials from his work and personal
7  equipment) and agreed to "certify in writing" that he had complied with the requirements of Section
8  5. Confidentiality Agreement § 5.E; *see also id.* § 12.

9  13.  Despite numerous efforts, Jacobs refused to provide his computer for inspection and
10 to allow SP to search and remove SP files.  To this day, Jacobs has SP's confidential and proprietary
11 information on his computer.

12 14.  The Confidentiality Agreement required that Jacobs not make any negative
13 comments or otherwise disparage SP.  Confidentiality Agreement § 9.  This obligation, like all of
14 the other rights and obligations in the Confidentiality Agreement, survived Jacobs' employment
15 with SP.  Confidentiality Agreement § 15.H.

16 15.  SP had been engaging a potential investor to invest $5 million in capital into SP.
17 Just before the potential investor was expected to provide such capital, Jacobs emailed the potential
18 investor and made disparaging statements about SP's business model.  Following Jacobs'
19 disparaging conduct, the potential investor decided not to invest in SP.

20 16.  Also, on or about April 18, 2019, Jacobs contacted a current SP customer.  SP had
21 been working on trying to close on approximately $20 million worth of projects with this customer
22 over the next two years.  Jacobs disparaged SP in communications with this current customer and
23 told the current customer that there was an alternative company that would be better for this
24 customer.

25 17.  The following day on April 19, 2019, SP's Chief Administrative Officer and General
26 Counsel, Adam Cain, wrote a Cease and Desist Letter to Jacobs requiring that he "cease all further
27 actions that directly or indirectly harm SP."

28 18.  On or about July 4, 2017, Jacobs and SP entered into an Independent Contractor

Agreement. Jacobs and SP were acting pursuant to the Independent Contractor Agreement through April 16, 2019.

19. The Independent Contractor Agreement provided that Jacobs was not to use or disclose SP's confidential information for purposes other than to benefit SP, that Jacobs was to return all confidential information at the end of his relationship with SP, and that he was not to misappropriate SP's unique service model.

20. Despite SP's requests for Jacobs to return SP's confidential information, Jacobs has not taken these steps. On information and belief, Jacobs has created a business based on the same unique service model as SP.

21. The Independent Contractor Agreement also required that Jacobs "not start [his] own business, or encourage, collaborate or cooperate with others to start a business that may reasonably be expected to compete with SP" while he worked as an independent contractor. Independent Contract Agreement, Exhibit D; *see also* Independent Contractor Agreement § 12(d) (incorporating exhibits to Independent Contractor Agreement as part of the contractual obligations).

22. Jacobs breached those obligations by encouraging a potential investor to explore investing in other companies that compete with SP.

23. Further, based on information and belief, while he was an independent contractor with SP, Jacobs was actively pursuing his own company to directly compete with SP.

## COUNT ONE

## Breach of Contract (Confidentiality Agreement)

24. SP incorporates by reference the allegations contained in all paragraphs above as though fully set forth herein.

25. The Confidentiality Agreement between SP and Jacobs is enforceable and supported by consideration.

26. SP performed all conditions, covenants, and promises required of it to be performed in accordance with the terms of the Confidentiality Agreement.

27. Jacobs breached the Confidentiality Agreement by, among other things, doing the following:

a. utilizing SP's confidential information to create his own competing business;

b. failing to return all of SP's Electronic Media Equipment and Electronic Media Systems as well as failing to permit SP to audit Jacobs' personal Electronic Media Equipment and personal Electronic Media Systems; and

c. disparaging SP to SP's current and future clients.

28. As a direct and proximate cause of Jacobs' breaches, SP has been damaged in an amount over $75,000 to be proven at trial.

## COUNT TWO

### Breach of Contract (Independent Contractor Agreement)

29. SP incorporates by reference the allegations contained in all paragraphs above as though fully set forth herein.

30. The Independent Contractor Agreement between SP and Jacobs is enforceable and supported by consideration. The Independent Contractor Agreement is governed by Arizona law and includes a choice of law provision selecting Arizona law.

31. Jacobs breached the Independent Contractor Agreement by doing, among other things, the following:

a. Not returning SP's confidential and proprietary information following the end of his relationship with SP.

b. Upon information and belief, using SP's confidential and/or proprietary information to create a competing company.

c. Upon information and belief, using SP's confidential and/or proprietary information to the detriment of SP.

d. Disparaging SP to SP's current and future clients.

32. As a direct and proximate cause of Jacobs' breaches, SP has been damaged in an amount over $75,000 to be proven at trial.

WHEREFORE, SP prays for:

A. Judgment against Jacobs for direct and consequential damages arising from Jacobs' breaches of the Confidentiality Agreement, to be proven at trial;

1   B.   Pre- and post-judgment interest on all damages awarded;

2   C.   To the extent to which law, equity, or contract allows, for reasonable attorneys' fees;

3   D.   For costs of suit incurred herein; and

4   E.   For such other and further relief, including equitable relief, as the Court may deem just and proper.

Dated:  April 1, 2021                                    FENNEMORE CRAIG, P.C.


By: /s/ *Emily Ward*
  Jessica L. Post
  Emily Ward
  *Attorneys for Defendants Sustainability Partners LLC and Thomas E. Cain and Counterclaimant Sustainability Partners LLC*

18287522